**Luella M. ZUNDEL, Plaintiff and Respondent,**

v.

**Joe M. ZUNDEL, Defendant and Appellant.**

No. 8353.

Supreme Court of North Dakota.

Nov. 21, 1966.

Lyle Huseby, Fargo, for appellant.

Mackenzie & Jungroth, Jamestown, for respondent.

ERICKSTAD, Judge.

This is an appeal by the defendant, Joe M. Zundel, from a judgment of the District Court of LaMoure County entered March 11, 1966, and from that court's order dated May 19, 1966, denying the defendant's motion to stay and to reopen the judgment. Trial de novo is demanded.

The plaintiff, Luella M. Zundel, initiated an action for divorce from Mr. Zundel by service of the summons and complaint on September 1, 1965. The alleged ground for divorce was extreme cruelty. In his answer Mr. Zundel denied the allegation of extreme cruelty, and in his counter-claim alleged that Mrs. Zundel had conducted toward him a course of extreme cruelty which inflicted upon him grievous mental suffering. He asked that the court grant him a divorce and award him the custody of their minor son.

The matter came on for hearing before the district court on February 16, 1966. At the close of the hearing on February 17, the attorney for Mr. Zundel stated that the court was aware that the parties had been discussing a tentative property settlement, and that he would at that time like to read into the record a stipulation which counsel for both parties had agreed would be reduced to more formal language and inserted in the file as an agreement between the parties. He stated that it had been stipulated by the parties, subject to the approval of the court, that a property division would be made between the plaintiff and the defendant, with the defendant paying to the plaintiff the sum of $40,000, $20,000 payable within 30 days of the entry of judgment, and the balance payable with-

in 60 days of the entry of judgment; that in consideration of the property settlement and with the approval of the court, the plaintiff would relinquish all interest in the property owned by the parties; that the defendant would pay the plaintiff alimony in the sum of $1,800 per year for her support; that each party would pay his or her attorneys' fees and costs; that the matter of the custody of their sixteen-year-old son would be left open until the further order of the court, pending his parole or release from the State Training School; that if certain savings bonds were located in the parties' home, these would be divided equally between the parties, but that in no event should the lump sum property settlement exceed $48,000; and that the household furnishings would be divided between the parties, so that the plaintiff could retain certain specific items.

Following a colloquy between the court and counsel and an off-the-record discussion between Mr. Zundel and his attorney, it was agreed that both parties were entitled to a divorce and that both should be granted a decree of divorce.

On February 28, 1966, the trial court made its findings of fact, conclusions of law, and order for judgment, consistent with the stipulation. Judgment dated March 11, 1966, was entered pursuant to the order for judgment.

Sometime thereafter Mr. Zundel employed a different attorney, and with the aid of this new attorney made a motion that the court stay the terms of the judgment and order that the judgment be re-opened so that the merits of the case could be reheard. He alleged that he was incompetent and unable to understand the proceedings on February 16 and 17, 1966, because he was then under the influence of drugs and was therefore incapable of making rational and prudent decisions. In support of this motion he filed various affidavits with the court.

The first affidavit was executed by Albert C. Kohlmeyer, a psychiatrist affiliated with the Neuropsychiatric Institute in Fargo. The pertinent part reads as follows:

Affiant further states that Joe M. Zundel is presently his patient and that said Joe M. Zundel has been suffering from great anxieties and under a severe mental strain; that your affiant knows that said Joe M. Zundel has been taking Valium mgms., and that he was supposed to take 5 three times a day to relieve nervous tension, and that he believes that the said Joe M. Zundel was taking more than the prescribed dosage on the 16th and 17th of February, 1966; affiant further states that even if said Joe M. Zundel took the prescribed dosage that said dosage has a tendency to disrupt the normal mental processes and obstruct sound reasoning; that if the said Joe M. Zundel on the 16th and 17th of February, 1966, took more of this drug than he was supposed to take, that it definitely would have diminished his ability to reason properly and would have prevented him from arriving at competent solutions to any problem confronting him.

The second affidavit was executed by John A. Beall, a medical doctor practicing at Jamestown. The pertinent part reads as follows:

Affiant further states that said patient has been under great mental strain due to various personal and family problems and that this mental strain existed on Wednesday and Thursday, February 16 and 17, 1966; that in September of 1965, affiant placed the patient on Valium mgms. 5 three times a day to be taken as needed to relieve nervous tension and anxieties; that from the number of refills of this prescription that said Joe M. Zundel secured, it would indicate that he took more of this drug than he was recommended to take; that any patient who takes more than the recommended or prescribed dosage of this drug would very

likely be hampered in the making of correct decisions that a prudent man would make; that to the uninformed lay person the recognition of an overdosage or abnormal ingestion of such a drug would not be apparent; that an abnormal intake of this drug would definitely hamper mental activity and judgments.

Mr. Zundel's brothers executed affidavits, the material parts of which read as follows:

Edwin Zundel, being first duly sworn, deposes and says that he is a brother of Joe M. Zundel; that affiant was in the courtroom during the trial of the above-entitled action on February 16 and 17, 1966, and that affiant knows of his own knowledge that his brother, Joseph, was not acting properly and was not acting in a prudent manner; affiant knows that his brother was taking more drugs for his nerves than he was supposed to take, and that his brother was absolutely unable to make any correct decisions, much less be a competent defendant on February 16 and 17, 1966.

Affiant further states that during said trial his brother did not act normally but rather acted irrationally.

Albert Zundel, being first duly sworn, deposes and says that he is a brother of Joe M. Zundel, the defendant in the above-entitled action; that affiant was in the courtroom on February 16 and 17, 1966, when said action was tried; affiant knows that his brother was acting in an erratic and abnormal fashion during said trial.

Affiant further states that he saw his brother take medicine for his nerves during said hearing, and that affiant knows that his brother was in no mental shape to make any intelligent, rational decisions regarding said action.

Resisting the motion, Mrs. Zundel filed an affidavit stating that on April 12, 1966, after the entry of the judgment, she received $20,000 on the property settlement and $1,800 as alimony. She also stated that she had executed a quitclaim deed to Mr. Zundel to the half-section of land in which she had a joint tenant's interest, and that she had executed a bill of sale to the personal property and had left both of these documents with her attorney, with directions to deliver them to the defendant.

Mrs. Zundel also filed an affidavit of her attorney in which he stated that he had, on April 20, 1966, delivered the documents to the law firm of Hjellum, Weiss, Nerison & Jukkala, Jamestown, the firm which represented Mr. Zundel at the time the hearing was held on February 16 and 17, 1966.

At the hearing on the motion, following the presentation of the affidavits and arguments of counsel, the trial court denied the motion, saying:

Well, the Court vividly recalls the proceedings that took place in this case. The defendant Mr. Zundel was represented by competent counsel at the time, the matter had been on the calendar for some time, the Court had occasion to communicate with both counsel for both parties for perhaps three or four weeks prior to trial time. The Court was also informed prior to the trial that negotiations had been going on for a possible property settlement in this case, and when the day of the trial came, the trial commenced in the morning, the testimony was heard, there were conferences in Chambers, at which time both of the parties were present with their counsel, both of the parties personally took part in the discussions before the Court that were had before the Court. The major consideration at the time was the property settlement and the Court recalls too that at the first conference the parties were considerably apart in their compromise. After the testimony on the part of the plaintiff was fairly well concluded on the property and the appraisal of the property, the Court had another conference with both counsel with both parties present at which time the property

values were discussed, and Mr. Zundel took part in all this. As I say, he was represented by counsel at the time.

As far as the Court was concerned, Mr. Zundel was competent at the time, he was rational, his discussions with the Court at all times were rational. If he had been under the influence of drugs as he now contends he was, it should have been apparent at that time to the Court or to his counsel, and if there was any indication, or would have been any indication that he was not competent, I feel satisfied that his counsel would have advised the Court that his client is not in a position to participate in the proceedings. No such indication was made to the Court, and as I have already indicated the Court spent considerable time with both the parties and their counsel going over all the figures, going over all the property values, and the Court concluded after this compromise had been reached that the compromise was a fair compromise, a fair settlement, that the Court after listening to all of the testimony of the property and the appraisals concerning the property—there were appraisers testifying as to the values of these properties—the Court is of the opinion that it would not have acted any differently than the parties finally compromised at. If anything, it would have awarded more to the plaintiff than the parties agreed to, and for this reason the Court feels that nothing could be gained at this time by rehashing this case, reopening it, for whatever purpose the defendant has in mind. All the testimony was before the Court as to the property. I mean, there is no contention here that the Court did not hear what property was involved, it's admitted that the properties were either owned individually or jointly as the evidence showed to the Court, and the only question appears to be that the defendant conceded to give too much of the property to the plaintiff, and the Court cannot see this as a valid excuse for reopening the case because the

Court's decision would be the same or it would award more to the plaintiff under the circumstances.

For this reason the Court is going to deny the motion to reopen and the Court is going to award the plaintiff attorney's fees in the amount of $100 and $25 for travel expenses for coming here to this motion hearing, and as far as the stay of proceedings are concerned, the Court will grant the defendant an additional 10-days time to comply with the previous Court order.

In the instant case the appellant does not show by affidavit or attempt to prove by any other means how the result would be different if his motion to reopen the judgment were granted. He merely asserts that the result might be different on a new trial. His whole emphasis on appeal seems to be that he has been denied his day in court because he was allegedly under the influence of drugs during the trial court proceedings and at the time that he agreed to the property settlement and the custody of his son and agreed that each party was entitled to a divorce; and that for this reason alone, the judgment should be reopened and he should be granted a retrial of the case on its merits.

Mr. Zundel has failed to refer us to any statute, decision, or rule of this court (or to any decision or rule of any court). The only citation of authority in support of his argument is a general reference to 49 C.J.S. Judgments § 280, at 508–509 (1947), the pertinent part of which reads as follows:

A party may have an adverse judgment opened or vacated on the ground that he was prevented by unavoidable casualty or misfortune from properly prosecuting or defending the action.

The cases cited in footnotes to this reference relate to facts dissimilar to the facts of this case.

However, our view is that Mr. Zundel's application comes within the provi-

sions of Rule 60(b) (1) or (6), N.D.R.Civ. P., which read as follows:

> On motion and upon such terms as are just, the court may relieve a party * * from a final judgment * * * for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; * * or (6) any other reason justifying relief from the operation of the judgment. * *

■ An application to vacate a judgment is addressed to the trial court's sound discretion, the exercise of which will not be disturbed on appeal except for abuse. See: Erick Rios Bridoux v. Eastern Air Lines, 93 U.S.App.D.C. 369, 214 F.2d 207 (1954), cert. den. 348 U.S. 821, 75 S.Ct. 33, 99 L.Ed. 647; Independence Lead Mines Co. v. Kingsbury, 175 F.2d 983 (9th Cir. 1949); 3 Barron & Holtzoff, Federal Practice and Procedure § 1323 (rules ed. 1958).

Referring specifically to the relief available under Rule 60(b) (6) of the Federal Rules of Civil Procedure, which is identical to our Rule 60(b) (6), Barron & Holtzoff states:

> Subdivision (b) (6), as is the case with subdivision (b) (2), (3), (4), and (5), is also new and authorizes a motion for relief for "any other reason justifying relief from the operation of the judgment." This broad language gives the courts ample power to vacate judgments whenever such action is appropriate to accomplish justice. Of course this power is not provided in order to relieve a party from free, calculated and deliberate choices he has made. The party remains under a duty to take legal steps to protect his interests. But if it is unjust that a judgment be enforced, Rule 60(b) (6) provides an avenue for escape from the judgment, unhampered by detailed restrictions, and the courts have used this clause in a wide variety of situations. * * *

3 Barron & Holtzoff, supra, § 1329, at 417.

In the case of Herlihy v. Kane, 310 Mass. 457, 38 N.E.2d 620, the Supreme Court of Massachusetts held that the trial court had discretion to vacate a judgment which had been brought about as a result of an abnormal mental condition of a party against whom it was rendered and who was not represented by a guardian or a guardian ad litem, there being sufficient evidence to satisfy the requirements of their statute that the petitioner have a meritorious cause of action worthy of a trial in court.

In discussing their statute, which permitted the trial court to vacate a judgment entered due to accident or mistake, the Massachusetts court said:

> * * * The granting of such a petition "is addressed largely although not exclusively to the sound discretion of the court." [Citation omitted.] We have no doubt that it is within the discretion of the court to vacate a judgment which has been brought about as the result of an abnormal mental condition of the party against whom it was rendered and who was not represented by a guardian or a guardian ad litem. It would seem that a misfortune of this kind belongs within the class for which the statute was designed to furnish relief.

Herlihy v. Kane, supra, 38 N.E.2d at 622.

In our recent decision in the case of State v. Braun, 145 N.W.2d 482 (N.D.1966), Rule 60(b) (6) was invoked. In that case we found that the trial court had abused its discretion in failing to vacate a judgment committing a minor child to the State Industrial School.

In Fernow v. Gubser, 136 F.2d 971 (10th Cir. 1943), the court refused to set aside a judgment which was entered without the mental condition of the party being brought to the attention of the court, incompetency alone being shown.

The court said:

> And such a judgment, entered without the mental condition of the party being

brought to the attention of the court, will not be set aside on the ground of incompetency alone. In addition, it must be prima facie shown that a meritorious defense to the claim existed or that some other right was not presented. [Citations omitted.]

That requirement is not met here. There is no showing that as the result of the mental condition of appellant, there was a failure to advance any contention or adduce any evidence bearing upon the issues adjudicated by the order. Neither is there any showing whatever that in the event of a new hearing additional or different evidence material to the issues will be adduced, or that any different result is reasonably to be expected.

Fernow v. Gubser, supra, at 973.

As in *Fernow,* there is no showing in the instant case that as a result of the alleged mental condition of Mr. Zundel he failed to advance any contention or adduce any evidence bearing upon the issues adjudicated; nor is there any showing that in the event of a new hearing, additional or different evidence material to the issues will be adduced, or that any different result is reasonably to be expected.

We have reviewed the evidence in support of Mr. Zundel's assertion that he was incompetent when the divorce proceedings were held and when the property settlement was stipulated.

It is generally stated that the burden of proof to establish insanity rests with the party who alleges it or seeks to avoid an act on account of insanity. 29 Am.Jur. Insane Persons § 133, at 254 (1960). We believe the burden of proof to establish incompetency resulting from excessive use of drugs likewise rests with the party who alleges it.

In this case, what is the proof of incompetency?

Neither of the medical affidavits indicates that the affiant knew of his own knowledge that Mr. Zundel was taking more than the prescribed dosage of Valium on February 16 and 17, when the divorce proceedings were held. The statement in Dr. Kohlmeyer's affidavit that the taking of the prescribed dosage of Valium has a tendency to disrupt the normal mental processes and obstruct sound reasoning is not proof that it actually did disrupt Mr. Zundel's normal mental processes and obstruct his sound reasoning.

The affidavit executed by Mr. Zundel himself, stating that he took drugs in excess of the recommended prescription, is a self-serving statement.

The affidavits of Mr. Zundel's brothers contain statements that would be expected in affidavits of brothers who had been as closely associated as they have been to Mr. Zundel.

The trial court considered these affidavits in light of his experiences with Mr. Zundel during the two days of the trial. His conclusion was that Mr. Zundel was competent. In his decision we find no abuse of discretion.

Even assuming that the proof were sufficient to show that Mr. Zundel was incompetent at that time, because he has failed to show the court how the result would be different if the judgment were reopened, the motion was properly denied.

We need not discuss the appeal from the judgment, as Mr. Zundel has waived his demand for trial de novo, having failed to present any arguments attacking the judgment on the record made in the trial court.

Both the judgment and the order of the trial court are affirmed.

TEIGEN, C. J., and STRUTZ, MURRAY, and KNUDSON, JJ., concur.