**Julia DOLL, Plaintiff and Appellant,**

v.

**Leo DOLL, Defendant and Respondent.**

**Civ. No. 8498.**

Supreme Court of North Dakota.

Nov. 14, 1968.

692

C. J. Schauss, Mandan, for plaintiff and appellant.

Maurice G. LaGrave, Mandan, for defendant and respondent.

PAULSON, Judge.

This is an appeal by the plaintiff, Julia Doll, from the judgment of the district court of Morton County, North Dakota, granting a divorce to both the plaintiff and the defendant and cross-complainant, Leo Doll; awarding to the plaintiff a lump-sum settlement of $23,000.00 and her personal belongings; and awarding to the defendant the custody of the two minor children of the parties as well as ownership of the 726-acre family farm, all of the farm machinery, livestock, tools, and other personal property.

Julia Doll commenced an action for divorce against her husband. She alleges that Leo Doll has treated her in a cruel and inhuman manner by refusing to talk to her except to berate her and quarrel with her, by calling her derogatory names, and by telling her continuously to leave their home and never to return; and that he has threatened her with bodily harm and abused her physically. She asked for custody of the two minor sons of the parties and requested her reasonable share of the real and personal property accumulated during their married life. Leo Doll interposed an answer and counterclaim in which he denied Julia's allegations of cruel and inhuman treatment and he alleged cruel and inhuman treatment on Julia's part by her refusal to converse with him, and by her use of vile and abusive language towards him. He alleged that she left the family home contrary to his wishes; that she associated in public with other men; and that she threatened him with bodily harm, and did, in fact, inflict injuries upon him. Leo further asserted that he was a fit and suitable person to have custody of the two minor boys and he requested the court to award him the farm in order to provide support for himself and his two minor sons, and so that the boys might have the benefit of the farm upon his retirement. He asked the court to grant him a divorce from his wife.

Julia, in her reply, admits the facts of her marriage, residency, and citizenship, and admits the birth of her children, but denies all of the above allegations.

Julia and Leo contested each other's grounds for divorce. The matter of the division of the property accumulated during their marriage was also litigated. In addition, Julia was dissatisfied with the sum awarded for attorney's fees and costs by the trial court for her appeal to this court, and has demanded a trial de novo.

The record reveals that Julia and Leo were married on October 5, 1937. Immediately after their marriage Julia and Leo commenced farming on the land which they subsequently purchased. Julia was given 5 calves and some furniture as wedding gifts and Leo received 5 horses and some old machinery. There were 6 children born to them as the issue of their marriage, all of whom have attained their majority and are self-supporting except Robert and Ronald, who were 18 and 16 years of age, respectively, at the time of the trial of the action. Since the marriage Julia and Leo together acquired 726 acres of farm land, which lie adjacent to the city of Glen Ullin, North Dakota, by purchasing the same. The improvements on the real estate consist of a modernized 60-year-old, 6-room house; a large livestock barn which is more than 50 years old; several granaries; and a garage, together with some fencing. Approximately 286 acres of land are tillable and the balance of the land is devoted to pasture and hay land which is not suitable for cultivation. The personal property at the time the par-

ties were divorced consisted of 27 head of cattle, one bull, 5 calves, 2 old Shetland ponies, some poultry, a line of old farm machinery, an old truck, a 1958 automobile, approximately 1200 bushels of wheat, and a bank account of less than $1,000.00. There were no liens on the real estate or on the personal property.

Julia was 52 years of age and Leo was 55 years of age at the time of trial. Julia was suffering from a nervous ailment for which she received limited medical attention consisting of psychiatric treatment in 1961, and also suffered from varicose veins. She was employed as a child custodian, earning $80.00 a month. Leo was in reasonably good health except for a nervous disorder. Julia moved to Mandan on the 17th of June, 1967, and has resided there since. Leo, Robert, and Ronald have continuously resided together on the family farm. The trial court found the real estate to be worth $50,000.00 and the personal property worth $7,675.00.

Prior to entering into a determination of the issues presented in the instant case, it is necessary to note that the Legislative Assembly of this State, in Chapter 127 of the Session Laws of North Dakota 1963, abolished and eliminated recrimination as a ground for the denial of a divorce and empowered the court to grant a divorce to each of the parties in a divorce action.

This appeal involves three primary issues:

1. Whether either or both of the parties are entitled to a divorce;

2. If the divorce is granted to each of them, did the trial court make an equitable distribution of the property; and

3. Did the trial court err in limiting the sum for attorney's fees to $350.00 and the further sum of $150.00 for costs, for Julia Doll to enable her to perfect an appeal from the judgment and decree of the district court?

█ Since Julia Doll has demanded a trial de novo on her appeal and set forth as error the granting of a divorce to Julia Doll and to Leo Doll, it is necessary for this court to review the findings of the trial court to determine whether the findings are supported by the evidence. The pertinent part of Section 28–27–32 of the North Dakota Century Code provides:

"* * * The supreme court shall try anew the questions of fact specified in the statement or in the entire case, if the appellant demands a retrial of the entire case * * *."

As is stated in Rohde v. Rohde, 154 N.W. 2d 385, 386 (N.D.1967), in paragraph 1 of the syllabus:

"1. Where appellant in divorce action demands a trial de novo, this court is obliged to try anew questions of fact in the entire case."

█ The first issue which confronts us is whether either Julia Doll or Leo Doll, or both of them, were entitled to a divorce. Having determined that Chapter 127 of the Session Laws of North Dakota 1963 empowers the court to award a divorce to either party or to both parties, it is now necessary to decide whether the record adequately supports the grounds for divorce asserted by Julia and Leo in this case. The trial court awarded both Julia and Leo a divorce on the grounds of extreme cruelty. A review of the evidence adduced at the trial by Julia and Leo, and corroborated by their respective witnesses, reveals that from the commencement of their married life neither of them have been able to solve in a reasonable manner the difficulties which arose between them. Both parties agree that over a period of many years their life had been constantly marked by disagreements, bitter quarrels, accusations of infidelity, and counter-accusations regarding habits of life and financial matters. The findings of the trial court, on a trial de novo, are entitled to appreciable weight. Gress v. Gress, 148 N.W.2d 166 (N.D.1967). In the instant case the trial judge had the opportunity to observe the parties, and their demeanor on the witness stand; and to judge the credibility to be

accorded their testimony and that of their corroborating witnesses. After reviewing and weighing the evidence and giving appreciable weight to the findings of the trial court, we believe that the evidence sustains the findings of extreme cruelty committed by Julia Doll and Leo Doll and that the trial court did not err in granting a divorce to each of them.

The second issue is whether or not the trial court made an equitable distribution of the property. Julia Doll contends that the valuation placed on the farm land by the court was too low and that such valuation had an effect on the amount of money to which she was entitled.

■ Leo Doll, the sole owner, testified that he had purchased 91 acres of farm land in 1961 at $61 per acre and it was his opinion that he could have secured only $50 per acre for the entire 726-acre farm at the time of trial. As the owner of the farm land, the testimony of Leo Doll as to its valuation is admissible; McCaffery v. Northern P. R. Co., 22 N.D. 544, 134 N.W. 749 (1912); Stark v. Heart River Irrig. Dist., 78 N.D. 302, 49 N.W.2d 217 (1951); Alm Construction Company v. Vertin, 118 N.W.2d 737 (N.D.1962) (as would be the testimony of neighboring farmers); Schmidt v. Beiseker, 19 N.D. 35, 120 N.W. 1096 (1909); Otter Tail Power Company v. Malme, 92 N.W.2d 514 (N.D.1958).

Julia Doll testified that in her opinion the value of the farm land was $100 per acre. Julia attempted to support this valuation through the testimony of Mr. Lester Schirado, an attorney who practiced in Mandan as well as at Glen Ullin. Mr. Schirado had acted as the attorney in consummating the sales of tracts of land in the immediate vicinity of the Doll farm. He had never personally visited those tracts of land, nor the Doll farm, to make any inspections or tests concerning the quality of the soil or the condition of the buildings involved. The testimony as to the sales prices of the other tracts of land was objected to as being without foundation because it was not shown that the sev-

eral tracts sold were comparable to the Doll property. The objection was sustained and Julia Doll's counsel, pursuant to Rule 43(c) of the North Dakota Rules of Civil Procedure, made a record of the excluded evidence. A review of Schirado's excluded testimony reveals that, as an attorney, he had drawn the legal closing papers in transactions concerning three different tracts of land, namely: a farm which sold for $70 per acre in the fall of 1965, the sale being between a father and son; a farm of 480 acres which was located 2½ to 3 miles from the Doll farm and which sold for $94 per acre during the fore part of 1966; and a farm which sold for $73 per acre in November 1967. It is further contended by Julia Doll that this evidence was admissible and should have been considered by the trial court in order to place the value of the farm land at $72,600.00, or at a figure of about $94 per acre.

There has been no challenge by either Julia or Leo Doll concerning the $7,675.00 valuation of the personal property, although Julia Doll urges that she is entitled to an equitable share of the personal property. Julia Doll thus concludes that the lump-sum settlement should be increased from $23,000.00 to a figure of $40,000.00.

Whether evidence as to the sale of similar property is admissible as substantive proof of the value of a particular tract of land or interest in realty has been the subject of much litigation. 118 A.L.R. 869; 85 A.L.R.2d 110.

As stated in 32 C.J.S. Evidence § 593(3)a, pp. 730–731:

"It is the general rule, however, commonly called the Massachusetts rule, that, where a proper foundation has been laid, * * * the value of lands, or interests in realty, at a particular time, may be proved by evidence of voluntary sales of similar property in the vicinity, made at or about the same time."

■ The view is taken in a majority of the jurisdictions that evidence of the sale

price of other real property is admissible upon the issue of the value of real property where the conditions with respect to the other land and the sale thereof are similar to those involved in the case at bar. 118 A.L.R. 870; 85 A.L.R.2d 110. In North Dakota we have permitted proof of comparable sales to determine value even in involuntary or forced sales. The Supreme Court of this State in Frederickson v. Hjelle, 149 N.W.2d 733 (1967), a condemnation case, decided that the admissibility of evidence of the price of land in a sale to a party having the power of eminent domain was within the trial court's discretion, and would not be set aside unless it was shown that the trial court had abused its discretion. Applying the general rule, proof of comparable sales is admissible to determine value when a proper foundation has been laid.

As stated in 32 C.J.S. Evidence § 593(3)c, p. 742:

> "The degree of similarity required to exist between properties, the nearness in respect of time and distance, and the reception of evidence of sales of other property, generally, are matters which rest largely in the sound discretion of the trial judge."

In the instant case proper foundation was not laid. The admission by the witness, Mr. Schirado, under cross-examination, that he had not viewed or inspected the property involved either in the land sale transactions or the Doll farm in order to check the quality of the soil and the condition of the buildings failed to sustain Julia Doll's contention that the lands involved were similar or comparable. Additionally, Mr. Schirado was never qualified as an expert so as to lend greater weight to any opinion elicited from him with reference to the 1967 valuation of the Doll farm land. City of Bismarck v. Casey, 77 N.D. 295, 43 N.W.2d 372 (1950); 159 A. L.R. 7. The trial court did not abuse its discretion in refusing to admit such testimony.

The sole remaining evidence as to the value of the Doll farm was the testimony of Julia Doll's valuation of $100 per acre; Mr. Doll's valuation of $50 per acre; and the valuation of $61 per acre, paid by Leo Doll in 1961 for 91 acres adjoining his farm. The determination by the trial court which valued the 726 acres at $50,000.00 indicates a per-acre value of approximately $69. After reviewing all of the above evidence, the figure of $69 per acre is supported by the testimony. In a trial de novo the trial court's determination of the facts are entitled to receive appreciable weight. Absent evidence to the contrary, we cannot say that the valuation of the real property involved here was improper.

The property settlement awarded to Julia Doll and to Leo Doll was determined by the trial court pursuant to the provisions of Section 14–05–24, N.D.C.C., which provides:

> "When a divorce is granted, the court shall make such equitable distribution of the real and personal property of the parties as may seem just and proper, and may compel either of the parties to provide for the maintenance of the children of the marriage, and to make such suitable allowances to the other party for support during life or for a shorter period as to the court may seem just, having regard to the circumstances of the parties respectively. The court from time to time may modify its orders in these respects."

This court in Fischer v. Fischer, 139 N. W.2d 845, 850 (N.D.1966), stated:

> "The power to divide property between husband and wife in a divorce action is vested in the trial court, and a division by it will not be overturned unless it is shown that the division is unfair and inequitable under the facts and circumstances of the particular case."

A perusal of the record reveals that the trial court carefully and judiciously considered the evidence of Julia Doll and Leo Doll, and their respective earning abilities; that is, that Leo was a farmer with a lim-

ited net income; and Julia had a net income of $80.00 a month, plus the prospective income she would receive from the cash settlement that Leo was required by the decree to pay to Julia (the $23,000.00); and that such amount would necessarily substantially encumber the family farm. The further facts that neither of the parties were innocent, the indiscreet conduct of Julia during their marriage, as well as their health and physical condition were considered by the trial court. It is agreed that Leo and Julia were the owners of only limited amounts of personal property at the time of the marriage. It is conceded that each of them worked diligently toward the accumulation of the property up to the time of their separation in June of 1967. The court, nevertheless, in granting custody of the two minor sons to Leo Doll was deeply cognizant of the support, supervision, and financial obligation which becomes a mantle of responsibility for the parent who solely undertakes such a burden. The two minor sons were still attending high school. Each of them indicated some interest in farming and Leo corroborated their testimony in stating that he would be willing to share his limited income with the boys or permit them to operate or lease the farm in the near future.

Our court in Fischer v. Fischer, 139 N. W.2d 845, 852 (N.D.1966), quoting from one of its earlier decisions, stated:

"* * * The distribution to be made depends upon the facts and circumstances of each particular case. * * * There is no rigid rule for the division of property but the ultimate object to be sought is an equitable distribution. * * * Ruff v. Ruff, 78 N.D. 775, 52 N.W.2d 107, at 111."

This court has held numerous times that the interest of the minor children is paramount to that of ·the parties. The trial judge was not unmindful of this underlying precept when he considered and awarded the sum of $23,000.00 to Julia Doll because the custody of the minor children and the duties of care, support, and education were salient factors in arriving at the $23,000.00 figure and in awarding the household goods, the farm equipment, and the real estate to Leo Doll.

Again, the findings of the trial court are entitled to appreciable weight. We agree that an equitable distribution of the property was accomplished and that the trial court did not abuse its discretion in making such distribution.

The final issue is whether the trial court erred in determining that for this appeal the attorney's fees should be $350.00 and the costs $150.00. Julia Doll submits that the attorney's fees and costs awarded were not commensurate with the professional services to be rendered by the attorney or considering the value of the property involved in this appeal. The Supreme Court and the trial court from which an appeal is taken in a divorce action have concurrent jurisdiction after appeal to award attorney's fees and expenses for perfecting the appeal. Bryant v. Bryant, 102 N.W.2d 800 (N.D.1960). The awarding of such fees and costs on appeal is left to the discretion of the trial court. § 14–05–23, N.D.C.C. Further, this court has held that any abuse of this discretion must be affirmatively established and absent such a showing this court will not interfere with the discretion of the trial court. Bryant v. Bryant, supra.

The trial court's reasons for the necessity for such fees are not disclosed in the record. We must therefore assume that the trial court, after considering the request for fees and costs, was not convinced that the award of a larger sum was justified in this case. On the basis of the record, we cannot say that $350.00 for attorney's fees and $150.00 for costs is so inadequate under the circumstances of this case as to amount to an abuse of discretion.

The judgment of the trial court is therefore in all things affirmed.

TEIGEN, C. J., and ERICKSTAD, STRUTZ and KNUDSON, JJ., concur.