**Audrey E. PORTER, Plaintiff and Appellant,**

v.

**Thomas D. PORTER, Defendant and Appellee.**

**Civ. No. 9470.**

Supreme Court of North Dakota.

Jan. 8, 1979.

Kessler & Anderson, Grand Forks, for plaintiff and appellant; argued by Damon E. Anderson, Grand Forks.

Pearson & Christensen, Grand Forks, for defendant and appellee; argued by Douglas A. Christensen, Grand Forks.

SAND, Justice.

Audrey Porter [Audrey], plaintiff, appealed from a Judgment of the First Judicial District Court, Grand Forks, awarding custody of the parties' three minor children to the defendant, Thomas D. Porter [David], and granting the plaintiff $150 per month alimony for an 18-month period. Audrey also appealed from the district court's denial of her motion for a new trial, her motion to alter and amend judgment, and her motion for attorney's fees and costs on appeal.

Audrey and David were married on 26 October 1971. On 9 February 1977, Audrey filed a complaint alleging irreconcilable differences as grounds for a divorce from David. In addition to a divorce, she also sought custody of the parties' three children, support payments for the children, an equitable division of the parties' property, and attorney's fees and court costs. David's answer requested that in the event the divorce be granted he be given custody of the three children and not be required to pay alimony.

David is a captain in the United States Air Force and at the time the divorce complaint was filed, the couple resided on the Grand Forks Air Force Base. Although Audrey was not employed prior to filing for a divorce, she was engaged in a home-selling plan known as "Copper Craft" for a period of five years and did some volunteer work at an organization called "Family Services."

In accordance with an interim order of 14 February 1977, Audrey was allowed to remain in the parties' rented home and was

given temporary custody of the three children. She and the three children moved from the home on the Air Force Base to an apartment in Grand Forks in May of 1977, where they remained until the date of trial. Also, in May of 1977 Audrey secured employment as a waitress/hostess working an evening shift averaging between four and five hours per night. During the hours Audrey worked at this job, the children were cared for in the home of a babysitter.

Following a five-day trial, the district court awarded custody of the three Porter children to David although the court found that either party would be a "fit and proper person to have custody." The district court stated as reasons for its award that because of the employment situation of the two parties, David was in a better position to provide for the support and maintenance of the children and would also be able to spend evenings with them, while Audrey would be unable to do either.

Audrey contended on appeal that the findings of the district court in support of these reasons were clearly erroneous and that the judgment should be reversed.

On 11 November 1977, Audrey moved the trial court to alter and amend judgment and on a subsequent date also moved for a new trial. Both motions were denied and Audrey filed a notice of appeal from the judgment and order denying these motions. Audrey also filed an application for an order directing David to pay costs and attorney fees incurred by her incident to this appeal, after which David filed cross-application for costs and attorney's fees on appeal. The district court denied both motions.

The issues on appeal in this case are:

(1) Are the findings of the trial court awarding the custody of the children to David and limiting alimony payments to Audrey clearly erroneous;

(2) Was the trial court's denial of Audrey's motion for a new trial and her motion to alter and amend judgment an abuse of discretion; and

(3) Was the trial court's denial of Audrey's application for attorney's fees and costs on appeal an abuse of discretion?

We first determine if the findings of the district court in support of the custody award of the parties' children to David and limiting alimony payments to Audrey are clearly erroneous.

The scope of review on this type action is summarized in *Haugeberg v. Haugeberg,* 258 N.W.2d 657, 659 (N.D.1977). We quote:

"The law in this area is quite clear and has been stated many times in the past by this court. The trial court's determination on matters of child support, alimony, and division of property are treated as findings of fact. *Kostelecky v. Kostelecky,* 251 N.W.2d 400 (N.D.1977); *Larson v. Larson,* 234 N.W.2d 861 (N.D.1975). Our scope of review on appeal of these findings is limited by Rule 52(a), N.D.R. Civ.P., and thus we will not set aside those findings unless they are clearly erroneous. A finding of fact is clearly erroneous when, although there is some evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made. *Kostelecky v. Kostelecky,* supra; *Rambel v. Rambel,* 248 N.W.2d 856 (N.D.1977); *In re Estate of Elmer,* 210 N.W.2d 815 (N.D.1973)."

Audrey asserted that a number of the findings made by the trial court are not supported by the evidence and are thus clearly erroneous. Before we examine Audrey's contentions we point out that when substantial evidence adduced at the trial supports a finding of fact, it will not be found clearly erroneous and correspondingly the mere fact that evidence was presented contrary to a particular finding does not make it clearly erroneous. *DeForest v. DeForest,* 228 N.W.2d 919 (N.D.1975). The trial court is vested with a great amount of discretion in matters of custody and what is in the best interests of the children as well as the amount and duration of alimony payments. This court must give great weight to the findings made and the inferences drawn from the evidence by the trial

court, giving due regard to the opportunity of the trial court to judge the credibility of the witnesses. *Matson v. Matson,* 226 N.W.2d 659 (N.D.1975).

Audrey first challenges a finding by the trial court that she

" . . . indicated a resolve to continue in her present employment as a night waitress/hostess at the Ramada Inn and continue with her 'Copper Craft' activities and does not at this time intend to go back to college and obtain a degree or to change her present employment or seek employment which would result in a higher income . . .."

Audrey contended that contrary to the trial court's finding, testimony clearly demonstrates she did not intend to continue her employment with either the Ramada Inn or the Copper Craft home-selling plan. Audrey testified she had discontinued her association with the Copper Craft home-selling plan and that she intended to leave her job as a waitress/hostess. She also testified she had secured part-time employment cleaning apartments for a local realty company and was in the process of starting to sell clothing through another home selling plan called "Beeline."

■ We agree the trial court erred in referring to "Copper Craft" as the home-selling plan with which Audrey intended to continue. The reference should have been to the "Beeline" selling program. The fact remains, however, that Audrey indicated her intention to continue at home-selling programs. The trial court's reference to "Copper Craft" rather than "Beeline," although error, was not reversible error under Rule 61, North Dakota Rules of Civil Procedure. Under Rule 61, NDRCivP, an error committed by the trial court must affect the substantial rights of a party to be grounds for reversal. Because the two home-selling programs appeared to be substantially similar in terms of the amount of time they would demand and the amount of income they could be expected to produce to assist in support of Audrey and her children, Audrey has failed to demonstrate that the court's erroneous reference to "Copper Craft" rather than "Beeline" in its findings substantially affected her rights as to justify a reversal of the judgment in this case.

Audrey's testimony on both direct and cross-examination showed the amount of income she could expect to earn from either cleaning apartments or selling clothing for the Beeline program was speculative, at best. Although Audrey stated she intended to leave her job as a waitress/hostess because the night shift she was currently working did not allow her to spend evenings with the children and the day shift ran into the afternoon, such that no one would be at home with the children when they returned from school, she also testified the job of cleaning apartments was on a trial basis and, that, *if necessary,* she would quit selling for Beeline and return to work as a waitress/hostess.

In view of Audrey's testimony that the job of cleaning apartments was part-time and on a trial basis and that she had suffered a revenue loss four of the five years she had worked on the home-selling plan of Copper Craft, the indication is that neither of her employment positions were financially secure. Although Audrey's employment with Beeline might be more profitable than her association with Copper Craft and her cleaning position might prove to be secure, the trial court was not required to accept such speculation and was justified in believing otherwise. Because Audrey stated she would return to her position as a waitress/hostess, if necessary, and because the income from her prospective employment appeared speculative, the finding of the trial court "that Audrey Porter has indicated a resolve to continue in her present employment as a night waitress/hostess at the Ramada Inn" was not clearly erroneous.

Audrey also contended the trial court's findings relative to her plans of furthering her education were clearly erroneous. Because the findings concerning Audrey's educational intentions are so closely related to the amount and duration of the alimony payments which were also challenged, we will discuss the two together.

The district court found that Audrey was within one year of obtaining her bachelor degree in distributive education or marketing and that it would be in the best interests of her and the children if she completed her degree in order that she be able to improve her prospect of earning additional income to help provide for the support of her and her children, but that she did not intend at that time to go back to college and obtain a degree. The court also found Audrey was in need of alimony for a period of 18 months in the amount of $150 per month which the court hoped she would use to enable her to complete her education.

When questioned at trial if she would use part of a property settlement she might receive to complete her degree, Audrey stated she would rather wait until her youngest child was older before going back to school. She later stated it was debatable whether or not she ever wanted to go back to college, and then later still, said she would eventually like to go back and finish her degree. Based upon the equivocal nature of Audrey's answers, the trial court's finding that Audrey did not at that time intend to go back to college was not clearly erroneous.

■ Audrey asserted the trial court abused its discretion in ordering her back to college. This argument totally ignores the language of the court's findings and conclusion. Nowhere in its judgment did the trial court "order" Audrey to go back to college and finish her degree. Rather, the district court provided Audrey with alimony payments which would financially assist her in obtaining her degree and expressed the desire that she use those payments for that purpose. The court felt the completion of Audrey's degree would be to the benefit of both her and her children.

■ The trial court's finding that completion of Audrey's education to increase her earning capabilities was in the best interest of her and her children was not clearly erroneous. Nor do we conclude the trial court abused its discretion in expressing its view that Audrey use the alimony payments to complete her education.

Audrey argued further that if the alimony was to be used by her for the completion of her education it was insufficient in both amount and duration. The issue of the insufficiency of the alimony award was also raised in Audrey's motion for a new trial. In an affidavit in support of that motion, Audrey stated she needed 58 credit hours to complete her degree in distributive education and that $150 per month was not a sufficient amount to meet the expenses of continuing her education.

Although Audrey testified at trial that she had not inquired into the requirements for the completion of her degree, she did state that she had attended college for a period of four or five years and assumed she needed an additional year for completion of her degree in distributive education. That testimony provided the evidence to support the trial court's finding that Audrey was within one year of completing her degree.

■ Audrey's affidavit submitted in support of her motion for a new trial and stating she needed 58 credit hours to complete her degree and the completion of that number of hours in one year may be difficult, was evidence which Audrey could have discovered and produced with reasonable diligence at trial and does not constitute grounds to justify granting her a new trial in accordance with Rule 59, NDRCivP. The party whose inaccurate or vague testimony may have misled the trial court in its finding of fact may not challenge that finding on appeal as being clearly erroneous particularly if there was no evidence presented at trial to the contrary and the inaccuracy was due to the party's own shortcomings. *Rummel v. Rummel,* 234 N.W.2d 848 (N.D.1975). Nor is it an abuse of discretion on the part of the trial court to deny a motion for a new trial based upon such an inaccuracy, when the evidence that would have corrected it was not "newly discovered." *Piper v. Piper,* 239 N.W.2d 1 (N.D.1976).

We agree with Audrey's contention that $150 per month may not meet all the costs of a college education, however as we stat-

ed previously, her argument ignores the language of the trial court in awarding the payments. The conclusion of the court states its hope that Audrey will use the alimony payments to *assist* her in completing her education. The alimony was not awarded to meet all the expenses Audrey may incur in completing her college degree nor was it even conditioned on being used for college expenses, rather it appears the alimony was awarded as an incentive for Audrey to complete her education and hopefully improve her station in life to the benefit of herself and her children. We do not determine that an award of $2,700 over a period of 18 months was clearly erroneous to accomplish that objective. In view of the fact that David was charged with the duty of supporting the children and paying certain debts of the parties including attorney's fees from the divorce, an award of a higher amount could well have caused financial difficulties for David to the detriment of the parties' children.

Audrey pointed to a number of other findings that she feels were clearly erroneous. Although the record contains testimony supporting each of Audrey's arguments, we find substantial evidence in support of the trial court's findings. We can find no useful purpose in commenting upon each of the findings and the evidence introduced by David to support those findings. A demonstration of the correctness of a finding is not a function of an appellate court and would serve no useful purpose. *Matson v. Matson, supra.* Suffice it to say that even in those instances where the trial court did not perfectly articulate a finding or where a mistake of fact was made, as was recited or stated earlier herein, such inaccuracies in this case did not affect the substantial rights of Audrey and are thus harmless.

The paramount criterion to be considered by a district court in awarding custody of children is the best interest of the children. *Ferguson v. Ferguson,* 202 N.W.2d 760 (N.D.1972); *Goff v. Goff,* 211 N.W.2d 850 (N.D.1973). In addition to a conclusion as to what is in the best interest of the children, the trial court in its findings of fact should give some indication of the appropri-ate factors that were considered in awarding custody to afford this court a clear understanding of the trial court's decision. *Fine v. Fine,* 248 N.W.2d 838 (N.D.1976); *Matson v. Matson, supra.*

In prior opinions concerning divorce actions, we have all but pleaded with district courts to prepare clear and detailed findings to enable us to gain a clear understanding of the trial court's decision and thus properly perform our review function. Judge Smith, in this case, has heeded our request, for which he should be commended. The findings of fact, conclusions of law, and memorandum opinion set forth not only the factors he considered in determining the best interests of the children, but also much of the evidence he relied upon in considering those factors. It is not so important that those findings be letter perfect in every instance or that each conform exactly to what one might think is the greater weight of the evidence, but rather that they give a meaningful understanding of the factual basis for the court's decision and are not clearly erroneous.

■ The findings make it clear that the trial court considered David in a better position to care for the support and maintenance of the parties' children and that because of his present employment he is in a position to lend more stability and guidance to nuturing the development of the children during those periods of time in which he would not be actually pursuing his employment than is Audrey. After reviewing the evidence introduced at trial we cannot say the factors, or the findings of fact supporting those factors used by the trial court in reaching its decision, as to the general determination of what was in the best interests of the children were clearly erroneous. The argument that the trial court did not consider the welfare and the best interests of the children is without merit.

We sympathize with the situation in which Audrey finds herself in this instance. She contends it was unfair that because she decided to forsake a career or employment opportunities in order to remain home and

care for her family and household duties while her husband advanced his career and earning capability, such decision has now become a factor in depriving her of the custody of the children. We cannot say, however, that it would be more fair to deprive David of custody because he did not remain home to care for his family and household during the day but developed his career to support his family. Both care and support are important functions of any family situation and award of custody to either parent in this case would have resulted in an unfairness to the other. Fairness to the parents, however, is not the test but rather what is in the best interests of the children. As we have stated on prior occasions, if we or the trial court had to decide custody questions on the basis of what is fair to the parents, our job would be insuperable. When the test of the best interests of the child is applied, the choice must be necessarily made between two or more possible but imperfect dispositions. *Odegard v. Odegard,* 259 N.W.2d 484 (N.D. 1977).

We now examine if the trial court's denial of Audrey's motion for a new trial was an abuse of discretion. As grounds for a new trial, Audrey asserted in her motion that a number of the findings were not supported by the weight of the evidence. In support of her motion, Audrey filed an affidavit setting forth changes in circumstances since the trial, such as her return to school, her employment as a cashier for the University of North Dakota, the care of the children while in David's custody, etc. In denying Audrey's motion, the trial court cited her failure to attach specifications of particulars in which the evidence was insufficient and that the affidavit reciting changes since the date of trial did not constitute grounds for a new trial.

■ In her motion for a new trial, Audrey simply stated material mistakes of fact occurred in a particular finding or conclusion of law and in a concluding paragraph said, "That as a result of said material mistakes of fact and errors of law a new trial is required to prevent an unjust verdict against the weight of evidence."

This court has said that although § 28–18–09, North Dakota Century Code, has, for purposes of appeal to the Supreme Court, been superseded by Rule 28, North Dakota Rules of Appellate Procedure, it still requires that insufficiency of evidence and errors of law be specified in moving for a new trial under Rule 59(b), NDRCivP. *Piper v. Piper, supra.* We have also said that the requirement of specifying grounds in a motion for a new trial requires something more than generalities. We agree with the trial court that Audrey furnished neither particulars nor specifications, based on the evidence, or the lack thereof, to show the trial court, opposing counsel, or this court, where the evidence was insufficient to support the findings she has challenged. It is not the duty of the trial court on a motion for a new trial to search the record to determine whether or not the evidence is sufficient to sustain a finding. The party making the motion must point out where the evidence is insufficient. *Montana-Dakota Utilities Co. v. Amann,* 81 N.W.2d 628 (N.D.1957). The mere assertion that a mistake was made in a particular finding does not meet the specificity requirement.

■ The affidavit submitted by Audrey indicates changes in circumstances since the date of trial. We are not told if Audrey intended those assertions as newly discovered evidence or as proof that the trial court erred in some of its findings as to the future intentions of Audrey. In either instance, they are inappropriate to support a motion for a new trial. Events occurring subsequent to trial are not grounds to justify a new trial under Rule 59(b), NDRCivP. The validity of a finding by the trial court, supported by substantial evidence on the record as to the future intentions of a party is not affected by a subsequent decision by that party to engage in conduct contrary to the finding.

■ Nor were the events subsequent to trial newly discovered evidence to support a motion for a new trial. It is well settled that evidence which does not tend to prove a fact or condition existing at or prior to the time of trial does not constitute "newly discovered evidence." *Piper v. Piper, supra.* Although changes in circumstances subse-

quent to trial, indicating the best interests of the children are no longer served by the award of custody to a particular party, may properly be submitted in a motion to invoke the trial court's continuing jurisdiction to modify a custody award, they are not proper support for a motion for a new trial. We conclude that the denial of Audrey's motion for a new trial was not an abuse of discretion. In further support of the trial court's denial of the motion, we note our prior discussion of Audrey's appeal from the judgment demonstrates the trial court's findings in this case were supported by the evidence.

Audrey argues the trial court abused its discretion in denying her motion to alter and amend judgment. The decision to grant or deny a motion to alter and amend judgment, like a decision to grant or deny a new trial, rests almost entirely with the discretion of the trial court. This court will not overturn such a decision unless it is clear that there was a manifest abuse of discretion and we have defined "abuse of discretion" as an unreasonable, arbitrary, or unconscionable attitude on the part of the court. *Piper v. Piper, supra.*

The changes or additions to the judgment requested by Audrey were made on the grounds that the court's findings of fact, conclusions of law, and order, did not reflect the entire decision of the court. The court made one of the additions requested by Audrey in her motion and denied the remainder. The changes or additions denied by the trial court were directed primarily toward property matters properly within the court's discretion in making an equitable distribution of property in a divorce matter. The changes denied by the court would not have substantially affected the judgment.

▮▮ Audrey used the correct procedure in seeking changes or clarifications in the trial court's judgment by bringing them to the attention of the court in a motion to alter and amend. The court, for those changes that were denied, either determined they were not substantial or simply did not reflect its decision, or both. The question before us is not if the trial court could have exercised its discretion to alter or amend the judgment as requested by Audrey, but whether its discretion was abused by the refusal to do so. *Zundel v. Zundel,* 146 N.W.2d 896 (N.D.1966); *Hefty v. Aldrich,* 220 N.W.2d 840 (N.D.1974). Certainly a trial court is not required to alter or amend the judgment in a matter that does not reflect its decision, and, more important, a judge is not required to alter or amend a judgment if the alteration or amendment would serve no useful purpose. *Dale Electronics, Inc. v. R. C. L. Electronics Inc.,* 488 F.2d 382 (1st Cir. 1973). Because the alterations or amendments requested by Audrey would either not have substantially affected the judgment or pertained to matters within the trial court's discretion in making its award of custody and property, we conclude the denial of the motion to alter and amend was not an abuse of discretion.

Finally, Audrey contended the district court abused its discretion in denying her application for costs and attorney's fees on appeal. The application filed with the district court stated, in part:

"In support of this Application the Plaintiff offers all of the pleadings and papers heretofore filed in this action as well as the testimony of the parties given at all previous hearings and the Affidavit attached hereto."

▮▮ The affidavit submitted with the application was signed by Audrey's counsel and set out that David was earning a substantial income as a captain in the United States Air Force and that Audrey was attending school by working part time and was unable to pay the entire transcript cost or attorney's fees necessary for the appeal.[1] At the hearing on the application, the trial court denied Audrey's request to testify as to her financial status.

The burden of showing that an allowance for attorney's fees for an appeal from a

1. We do not approve of the practice of an attorney filing an affidavit on behalf of his client asserting the status of that client. Not only does the affidavit become hearsay but it places the attorney in a position of a witness, thus compromising his role as an advocate.

divorce action is necessary rests upon the party seeking the allowance. *Zundel v. Zundel, supra; Halla v. Halla,* 200 N.W.2d 271 (N.D.1972). Although this court and the trial court have concurrent jurisdiction to award attorney's fees and costs for an appeal, we have stated our view that the trial court is in a far better position to pass on such motions than is this court. *Orwick v. Orwick,* 152 N.W.2d 95 (N.D.1967); *Keig v. Keig,* 270 N.W.2d 558 (N.D.1978). The award of such costs and fees is left to the discretion of the trial court and will not be interfered with by this court in the absence of an affirmative showing of an abuse of discretion. *Doll v. Doll,* 162 N.W.2d 691 (N.D.1968).

We have also stated that generally it is sound practice to determine the necessity for the amount of attorney's fees only after a hearing, rather than basing such determinations upon an affidavit. *Keig v. Keig, supra.*

In the present case, although a hearing was held on the application for costs and fees, Audrey was not allowed to testify. Rule 43(e), NDRCivP, provides:

> "*Evidence on Motions.* When a motion is based on facts not appearing of record the court may hear the matter on affidavits presented by the respective parties, but the court may direct that the matter be heard wholly or partly on oral testimony or depositions."

Audrey asserted that the trial court abused its discretion in denying her application on the grounds that she failed to provide an adequate showing of her financial condition to determine if she was able to pay attorney's fees and costs after it had denied her earlier request to present oral testimony on her financial condition.

Although Rule 43(e), NDRCivP, allows the trial court to hear a motion wholly or partly on oral testimony, we do not conclude that it is necessarily required to do so. The trial court in this case was familiar with the financial conditions of the parties at the time of the application hearing, as a divorce judgment had been entered approximately five months earlier. In addition, both parties submitted affidavits for the application hearing. Audrey, in her application, stated it was to be supported by her attached affidavit and all previous testimony and filings thereby implying that the court's decision be based upon the same.

In its order denying Audrey's application, the district court pointed out Audrey had received in excess of $3,000 as part of the property settlement, part of which could have been reserved for costs and attorney's fees on appeal. The court also noted the financial obligations that were imposed upon David as a result of the divorce, including payment of attorney's fees for the divorce not only for his attorney but also Audrey's. Based upon these considerations, we conclude the court did not abuse its discretion in denying Audrey's application for costs and attorney's fees on appeal.

The judgment of the trial court and its orders denying the plaintiff's motions for a new trial, petition to alter and amend judgment, and application for attorney's fees and costs for appeal, are affirmed.

ERICKSTAD, C. J., and PAULSON, PEDERSON and VANDE WALLE, JJ., concur.