(78 N. W. Rep. 352.)

---

## ALVAH P. WEBSTER *vs.* JOHN McGAUVRAN.

Opinion filed January 11, 1899.

**Exemptions—Head of Family.**

> Under section 3625, Rev. Codes, an unmarried man who has residing with him, and under his care and maintenance, a married adult brother, who is unable to take care of or support himself, is the head of the family.

**Schedule Need Not Disclose Claimant to Be Head of Family.**

> In the verified schedule of property which the law requires an exemption claimant to deliver to the officer who has levied upon his property, it is not necessary for the claimant to state that he is the head of a family.

Appeal from District Court, Cavalier County; *Sauter*, J.

Action by Alvah P. Webster against John McGauvran. Judgment for defendant. Plaintiff appeals.

Reversed.

*J. C. Monnet*, for appellant.

*Gray & McMurchie*, for respondent.

BARTHOLOMEW, C. J. This was an action to recover the value of a judgment in plaintiff's favor, and against one Pinkerton, which it is alleged the defendant wrongfully converted. The defendant was sheriff of Cavalier county. As such sheriff he received an execution issued upon a judgment in favor of C. Aultman & Co. and against this plaintiff. By virtue of said execution, the defendant proceeded to levy upon the judgment in plaintiff's favor against Pinkerton. Plaintiff claimed, or attempted to claim, such judgment as exempt from seizure under execution; but his claim was

disallowed by the defendant, who proceeded under certain statutory provisions authorizing the same, and concerning which there is no controversy, to assign such judgment to said C. Aultman & Co., the same being received by such party as cash to its face amount, and the defendant returned the execution satisfied to that extent. The case was tried to a jury, and at the close of the testimony each party moved for a directed verdict in his favor. Plaintiff's motion was denied, and that of the defendant was granted. Subsequently a motion for a new trial was overruled, and the judgment entered on the verdict. Plaintiff appeals from the judgment. The errors assigned are based upon the rulings denying plaintiff's motion for a directed verdict and granting that of defendant. The record does not disclose upon what ground the ruling of the court was based, and we are therefore left to inquire whether or not, in any view of the case, it was proper to direct a verdict for defendant. Since the seizure and transfer of the judgment are admitted by defendant, in order to sustain a directed verdict in his favor it must appear, either that plaintiff failed to properly claim such judgment as exempt, or that the same was not exempt as a matter of fact, or that the same was not exempt as a matter of law. As for the first point, we held in *Northrup* v. *Cross,* 2 N. D. 433, 51 N. W. Rep. 718, that a debtor who undertakes to select his exemptions must indicate to the officer holding the writ the specific property claimed, but that the selection could be made in any terms that the officer could not or ought not to misunderstand. It is the theory of our law that the debtor should deliver to the officer holding the writ a sworn schedule of all his personal property. It then becomes the officer's duty to have the same appraised. If the appraised value exceeds $1,500, the debtor or his agent may select, from all the personal property, articles of the value of $1,500, and the remainder is subject to the process. If, however, the appraisement does not exceed $1,500, the entire property is exempt, and no selections need be made. In this case the sworn schedule was delivered to the officer, but no appraisement was ever made, so that no opportunity for selection ever arose. The plaintiff did, however, in writing, specifically claim this judgment as exempt, and demanded its release. But it is said that the schedule was defective, in that it did not state that plaintiff was the head of a family. The statute (section 5520, Rev. Codes) does not require any such statement in the schedule. It leaves the officer to decide that question at his peril. This may be a defect in the statute, but it is so written. We have no doubt that the plaintiff took all steps necessary for him to take to secure the release of the property. It is urged that he based his claim under the wrong section of the statutes. That would not destroy his exemption rights. As a matter of fact, he claimed it under the laws of the state generally as well as under a specific statute.

It is defendant's main contention, however, that the plaintiff was not entitled to exemptions because he was not the head of a family.

He was an unmarried man, residing upon a farm. With him lived his brother, a man 60 years of age, and his brother's wife. Our statute (section 3625, Rev. Codes) thus defines "head of family": "The phrase 'head of a family' as used in this chapter includes within its meaning: (1) The husband or wife when the claimant is a married person; but in no case are both husband and wife entitled each to a homestead under the provisions of this chapter. (2) Every person who has residing on the premises with him or her, and under his or her care and maintenance, either: (a) His or her child or the child of his or her deceased wife or husband, whether by birth of adoption. (b) A minor brother or sister or the minor child of a deceased brother or sister. (c) A father, mother, grandfather or grandmother. (d) The father or mother, grandfather or grandmother of a deceased husband or wife. (e) An unmarried sister or any other of the relatives mentioned in this section who have attained the age of majority and are unable to take case of or support themselves." The evidence in this case shows, without conflict, that plaintiff's brother who resided with him was afflicted with asthma; that he was unable to do manual labor, except that for an hour or two in the morning he would work in the garden, at the proper season of the year. He was practically without any means of support whatever, except a pension of $12 per month. His expenses for medicines were about $10 per month. He required more or less care all the time, and some days he required constant attendance. His wife was in good health, but possessed of no property or means of any kind. The plaintiff furnished all the provisions, clothing, and expenses necessary for the household. How long this condition of things existed is not clear from the record. It existed at the time of the levy and "prior" thereto, and it continued to exist from that time (May, 1896) until about December 1, 1897, at which time the afflicted brother went to Minneapolis, the plaintiff furnishing the means, and was still at Minneapolis, stopping with a sister, when this case was tried, on December 21, 1897. We think this conclusively shows that this was not a mere temporary arrangement, but that the afflicted brother was under the "care and maintenance" of plaintiff in the sense in which those words are used in the statute. It is argued, however, that the afflcted brother was himself the head of a family, under the section quoted; and that, if execution had been issued upon a judgment against him, he could have claimed exemptions as the head of a family; and hence to allow plaintiff the exemptions permitted to the head of a family would be giving two heads to the one household. That argument should have been addressed to the legislature. It can have no weight with a court in construing a statute the language of which is so plain that there is no room for construction. The second subdivision of the section declares every person to be the head of a family "who has residing on the premises with him or her and under his or her care and maintenance, either: * * * (b) A minor brother or sister or the minor child of a deceased brother

or sister;" or, "(e) An unmarried sister or any other of the relatives mentioned in this section who have attained the age of majority and are unable to take care of or support themselves." A brother is one of the other relatives mentioned in the section, and it is perfectly clear that the legislature intended to include a married adult brother. Under letter "(b)," a minor brother or sister is placed upon the same footing, but not so under letter "(e)," in speaking of adult brothers and sisters. There the sister must be unmarried, while no such restriction attaches to the brother. The reason for this is obvious. When a sister is married, the law presumes that the husband will suport her. It requires him to support her either from his estate or by his labor. And this is the almost universal condition that exists in society. The husband does support the wife. True, the law requires the wife to support the husband from her separate estate, if she have any, when he is unable to support himself, but it does not require her to support him by her manual labor (section 2765, Rev. Codes) ; and experience and observation teach us that, generally, she would be unable to support him by labor, however desirous of so doing she might be. Our statute simply recognizes these everyday conditions. All that it requires in case of an adult brother is that he should be unable to take care of and support himself. That such was the case in this instance cannot be questioned on this record. There is no conflict in the evidence whatever. The property, the value of which plaintiff seeks to recover, was seized by the defendant under execution and disposed of by him. Plaintiff properly claimed his exemptions. If the head of a family, he was entitled to hold the property as exempt. He was the head of a family, under the undisputed facts and the law. The judgment of the District Court is reversed, and a new trial ordered. Reversed. All concur.