Delta M. BINGERT, Plaintiff and Appellee,

v.

Nick BINGERT, Defendant and Appellant.

Civ. No. 9214.

Supreme Court of North Dakota.

Nov. 19, 1976.

Rehearing Denied Dec. 27, 1976.

Gordon W. Schnell of Mackoff, Kellogg, Kirby & Kloster, Dickinson, for plaintiff and appellee.

William R. Mills, Bismarck, for defendant and appellant.

VOGEL, Justice.

Nick Bingert, the appellant, after being married to Delta Bingert for 29 years, was divorced by her in 1970. He appeals from the denial of his motions to modify the alimony award of $175 per month and from the upholding by the district court of the constitutionality of the alimony statute of this State which he asserts discriminates against husbands on the basis of sex. We affirm.

## I. ATTACK ON DIVORCE DECREE

The divorce judgment was entered by default, pursuant to a property settlement entered into by the parties. Nick Bingert claims now that he entered into the agreement without effective advice of counsel at a time when he was confident that he would be reconciled with his wife and while he was under the influence of habitual intoxication.

█ By this showing he seems to be attempting to reopen or vacate the original judgment. If so, the attack should have been made as a motion to reopen the judgment under the provisions of Rule 60, North Dakota Rules of Civil Procedure, just as a similar attack was made upon a judgment of divorce in *Smith v. Smith*, 71 N.D. 110, 299 N.W. 693 (1941), under a former rule relating to the reopening of judgments. See also *Harchenko v. Harchenko*, 77 N.D. 289, 43 N.W.2d 200 (1950).

█ Even if we were to construe the motion to modify the judgment as having been brought under Rule 60, the showing is insufficient to justify relief. There is no adequate showing of mistake, inadvertence, surprise, excusable neglect, newly discovered evidence, fraud, misrepresentation, or misconduct of an adverse party or any other basis for relief from the operation of the judgment. The affidavits of record indicate that Nick Bingert, at the time of the divorce, was an alcoholic, but they do not show that he was incompetent to deal with his affairs or that he was misled or imposed upon by anyone. He may have believed he would be reconciled with his wife, but that is no basis for upsetting a binding agreement arrived at without duress or fraud. The record indicates that he sought the advice of his landlord, an attorney, and was informed by that attorney that he seldom handled domestic-relations cases. Nick Bingert was advised to retain an attorney experienced in the domestic-relations field, but declined to do so. Instead, he used the services of the one who recommended that he go elsewhere. The record also indicates that the parties worked out their own property-settlement agreement between themselves and then asked their attorneys to put it in writing. It was signed by both of the parties and the attorneys.

## II. MODIFICATION OF ALIMONY AWARD

Nick Bingert contends that the alimony he is required to pay his ex-wife should be reduced or eliminated for various reasons. While agreeing generally that he is required to show that "circumstances" have changed in order to justify a change in alimony, he presents no evidence of any reduction in his own income, which derives from wages as a rural mail carrier and from television repair work and is apparently higher than at the time of the divorce. Instead, he refers to these factors: (1) he has cured his former alcoholism; (2) he has difficulties with his health, is often tired, has foot trouble and sinus trouble, a back injury, and asthma; (3) his former wife spends time in bars and wastes the alimony money; (4) she is in good health, able to work, and working; (5) he has paid her $11,000 since the divorce under the terms of the judgment; and (6) he is lonely, wants to get married, and it would not be fair to his new wife for him to keep paying his former wife alimony.

While some of these factors are indeed changes in the circumstances of one or the other or both parties, we believe they are not the kind of changes contemplated by our statutes and prior decisions.

■ The authority to modify alimony decrees is found in Section 14–05–24, North Dakota Century Code, which grants the courts authority to require payment of alimony and provides that "The court from time to time may modify its orders . . . ." As noted in *Agrest v. Agrest*, 75 N.D. 318, 27 N.W.2d 697 (1947), the statute does not enumerate the circumstances to be considered in deciding on the amount of alimony at the time of the divorce or in later deciding whether that amount should be modified. Each case therefore is decided on its own facts and circumstances. However, in *Agrest*, the court, in discussing possible modification of a division of the property of the parties, referred to those circumstances

"concerning the condition, needs and conduct of the parties, and, in particular, their respective earning powers as determined by the age, ability, experience and health of each spouse; and the amount of property owned by them, its nature, and the time and manner of its acquisition; in other words, the source from which it was derived, and how and when it was acquired, and whether the property is owned separately or jointly, and the equities of each spouse therein." 27 N.W.2d 697, at 703.

We believe that a "change in circumstances," in the context of consideration of a motion to reduce alimony, means a change which affects the financial abilities or needs of one party or the other, and not a change which indicates an increase or decrease in the rectitude of the conduct of one party or the other or a change which might have affected the grounds for divorce if it had occurred prior to the decree. Accordingly, we believe that items (1) and (3) are not relevant to this issue, although it is commendable that alcoholism be conquered, and regrettable if money be wasted [although we hasten to add that the preponderance of the evidence disproved item (3)].

■ As to item (6), Nick Bingert is refreshingly more candid than most others who seek to end their alimony obligations for the same reason. However, a desire to remarry could scarcely be adequate ground

for reduction of alimony when we have held that not even the fact of remarriage is sufficient change of circumstance to justify modification of alimony obligations. *Bryant v. Bryant*, 102 N.W.2d 800 (N.D. 1960). While appellant claims that such a rule is unjust and sexually discriminatory, since the wife can terminate alimony by remarrying while the husband cannot, this result is required in fairness to spouses and children who already exist, and one who is divorced cannot be permitted to choose a course which deprives them of what they are entitled to for the benefit of a future family he chooses to create. Furthermore, since there is no discrimination based on sex in the statute, as we show below, this rule applies equally to male and female spouses ordered to pay alimony.

As to item (4), no change in circumstances is shown. The wife had earning ability at the time of the divorce. Her income now is slightly higher than it was then, partly because she took on a second job babysitting to supplement her earnings during a period when alimony was not being paid. This is not a change of circumstances entitled to favorable judicial recognition.

Item (2) has not affected the earning ability of the appellant. He has the same job he formerly had, at higher pay.

As to the assertion that alimony should be ended because he has now paid $11,000, we believe it might be possible for a trial court to conclude that the total sum paid has become, or is becoming, unreasonable, when viewed along with other changed facts, as a Connecticut court did in *Grinold v. Grinold*, 32 Conn.Sup. 225, 348 A.2d 32 (1975). But in this case we find no error in the decision of the district court.

We conclude, as did the trial court, that no change in circumstances sufficient to justify reducing the alimony has been shown.

■ Our conclusion would have been the same even if the judgment were not based upon a property-settlement agreement of the parties, the existence of which makes us "more reluctant to order a revision and modification of a decree where such decree

was based on agreement than where such agreement is based on the finding of the court as to ability to pay." *Bryant v. Bryant, supra,* 102 N.W.2d 800, at 807.

### III. CONSTITUTIONALITY OF ALIMONY STATUTE

The appellant strongly asserts that the statute of this State as to alimony (§ 14–05–24, N.D.C.C.) is unconstitutional because it is based necessarily, in part, upon the statute as to support during marriage (§ 14–07–03, N.D.C.C.) which contains an impermissible discrimination based upon sex. He cites generally as to sex-based discrimination *Reed v. Reed,* 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971); *Frontiero v. Richardson,* 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973); the North Dakota statute as to wage discrimination because of sex (§ 34–06.1–01, N.D.C.C.); and the special concurrence in *Jordana v. Corley,* 220 N.W.2d 515 (N.D.1974), which suggests that presumptions that a parent of one sex or the other is entitled to custody of children at certain ages may be unconstitutional.

The argument then proceeds in this way: (1) that the North Dakota statute on support during marriage, Section 14–07–03, N.D.C.C., is discriminatory because it requires a husband to support his wife "out of his property or by his labor," while it requires a wife to support her husband "out of her separate property, [only] when he has no separate property and he is unable from infirmity to support himself"; (2) that the duty to pay alimony is a continuation of the duty to support, citing *Nugent v. Nugent,* 152 N.W.2d 323 (N.D.1967), and *Webster v. McGauvran,* 8 N.D. 274, 78 N.W. 80 (1899); and (3) that although the North Dakota statute as to alimony, Section 14–05–24, N.D.C.C., may be neutral as between the sexes, since it speaks only of the distribution of property of the "parties" and the circumstances of the "parties," it still is infected with the unconstitutionality of Section 14–07–03, *supra,* because alimony is a continuation of the discriminatory requirements of the latter section.

While these arguments are supported by some of the case law cited and the appellant's syllogism is impeccable, we cannot agree with his conclusion because we do not agree, under the circumstances of this case, with the second proposition (that the duty to pay alimony is a continuation of the duty to support).

*Webster v. McGauvran, supra,* does not relate to alimony, but it does make the distinction between the duty of the wife to a husband and the duty of a husband to support a wife, similar to that described in (1) above. It makes this distinction in the course of a discussion of duties of support of an unmarried brother or sister by another sibling. See also *State v. Whitver,* 71 N.D. 644, 3 N.W.2d 457 (1942). *Nugent v. Nugent, supra,* makes the statement relied upon by appellant by quoting from a Maine case asserting that "The award of alimony is a continuance under the order of the court of the husband's obligation to support the wife, . . ." but it does so in the context of a discussion of whether payment of alimony by the husband should be cut off after the wife remarries. Although the language quoted is also included in the syllabus, we believe it was not an essential holding in the case. The essential holding, to which we adhere, was that public policy is opposed to requiring payment of alimony by a former husband, after remarriage of the former wife, in the absence of exceptional circumstances. We note that other courts have held that alimony is a continuation of the right to support during marriage. *Guinter v. Guinter,* 72 S.D. 554, 37 N.W.2d 452 (1949); *Panarella v. Panarella,* Sup., 134 N.Y.S.2d 440 (1954); *Lum v. Lum,* 138 N.J.Eq. 198, 47 A.2d 555 (1946); *Kontner v. Kontner,* 103 Ohio App. 360, 139 N.E.2d 366 (1956); *McNaughton v. McNaughton,* 258 S.C. 554, 189 S.E.2d 820 (1972).

We believe, however, that the right to support of one spouse by the other during marriage is, as defined by our statutes and interpreted by our cases, a right which is entirely independent of the right of one spouse to alimony, to be paid by the other,

after the marriage is ended. Any attempt to integrate the one into the other, we believe, will only lead to confusion.

We believe that the trend in modern domestic-relations law is to treat alimony as a method for rehabilitating the party disadvantaged by the divorce. This seems to be the basis of the Uniform Marriage and Divorce Act, adopted in at least four States, not including North Dakota.

Under this view, we need not examine the constitutionality of Section 14–07–03, N.D.C.C., relating to support of married persons, since the result in this case would be unaffected by any determination of unconstitutionality of that statute.

■ As to the constitutionality of the alimony statute, Section 14–05–24, N.D.C.C., there can be no question. As noted above, it is neutral in terms as between the sexes, speaking only of the duty of "parties" to each other, and the power of the court to decree alimony and property as between the "parties." Appellate cases involving the recognition of the right of the husband to alimony payable by the wife are not unknown in this jurisdiction. Sixty-five years ago, in *Hagert v. Hagert*, 22 N.D. 290, 133 N.W. 1035, 38 L.R.A.,N.S., 966 (1911), an action for separate maintenance by a husband against a wife, the court concluded (even in the absence of an authorizing statute) that the courts had the right to give relief in the form of temporary alimony to a husband suing for separate maintenance a wife who had substantial assets. And in *McLean v. McLean*, 69 N.D. 665, 290 N.W. 913 (1940), a wife was ordered to pay the equivalent of temporary alimony, and the propriety of permanent alimony was strongly indicated.

We therefore hold that Section 14–05–24, N.D.C.C., is neutral as between the sexes and is constitutional.

In so holding, we do not mean to indicate that we do not recognize the possibility of the existence of sex as a "suspect classification" as in *Reed, supra,* and *Frontiero, supra.* We recognized such a possibility in *Tang v. Ping*, 209 N.W.2d 624 (N.D.1973).

And in the different context of physical and mental defects, we have recognized the "suspect classification" approach. *In Interest of G. H.*, 218 N.W.2d 441 (N.D.1974).

Affirmed.

ERICKSTAD, C. J., and PEDERSON, PAULSON and SAND, JJ., concur.