**Thomas S. SMITH, Plaintiff and Appellee,**

v.

**Peggy L. SMITH, Defendant and Appellant.**

**Civ. No. 10212.**

Supreme Court of North Dakota.

Nov. 24, 1982.

Patrick F. Leier, of Harms, Leier & Evenson, Williston, for plaintiff and appellee.

Alice K. Olson, of Lamb, Schaefer, McNair, Larson & Olson, Fargo, for defendant and appellant.

VANDE WALLE, Justice.

This is an appeal from a judgment granting Tom Smith a divorce from Peggy Smith. The appeal involves issues of child support, visitation, spousal support, property division, and debt division. We modify the trial court's judgment regarding child support and spousal support and affirm as modified.

Tom and Peggy Smith were married in 1970 in Leeds, North Dakota, when Tom was a senior in high school and Peggy was a freshman at Valley City State College. Tom and Peggy lived in Leeds until Tom finished high school. Later they moved to Wahpeton for further education and to Grand Forks and Williston for employment. While at Wahpeton Tom completed a computer-technician course and Peggy completed six months of a general-secretarial course.

During the years Tom and Peggy lived in the Grand Forks area, Tom first worked in a bank as a computer operator, and later he was employed by a sporting-goods company. Peggy worked four years in a clerical position and later she took care of children in her home.

In 1980 Tom was laid off in Grand Forks and he moved his family to Williston when he secured employment as an equipment operator. In 1981 Tom and Peggy separated. Peggy and the four minor children born of the marriage returned to Leeds. The children have various physical problems as one is epileptic, one has a severe speech impediment, one has physically impaired feet, and all have ear and throat problems.

During Tom and Peggy's marriage Peggy's father, Dale Streyle, made several financial gifts and loans to the couple. The loans have not been repaid. When Tom and Peggy were married in 1970, Peggy's father paid for their apartment in Leeds. He lent them money when they were going to school in Wahpeton. When Tom and Peggy moved to Grand Forks, Mr. Streyle lent them $2,500 for a downpayment on a mobile home. When they purchased a home two years later and were unable to sell the mobile home, Peggy's father took over the payments on the mobile home and the lot rent. Mr. Streyle also supplied $9,000 for a downpayment on a townhouse in Williston. Later, Tom and Peggy decided to move the home they had been unable to sell from the Grand Forks area to Williston, and Peggy's father arranged a $13,000 loan at the bank in Leeds. When Peggy and the children moved back to Leeds after the separation, Peggy's father gave her $1,000 a month for living expenses.

After the separation Tom moved in with friends in Williston. He continued in employment as an equipment operator with gross earnings of over $25,000 per year. During the summer Peggy taught dance classes in Leeds and earned $275 per month. Peggy planned to buy a car and go to college in Devils Lake in the fall to study for a four-year degree in speech pathology. Her income is virtually nonexistent other than support from Tom, gifts from her father, and loans she is able to obtain.

The trial judge determined Peggy would receive custody of the four children, and he arranged a visitation schedule for weekends, summer vacations, and holidays. He granted a divorce based on irreconcilable differences and divided the personal property and indebtedness. The judge gave Tom the four tax exemptions for the children and ordered Tom to maintain medical insurance for the children and pay one-half of their medical expenses not covered by insurance. In addition, the judge ordered Tom to pay $100 per month per child for support of the children and $100 per month for 30 months as spousal support for Peggy.

The issue before this court is whether or not the trial judge erred in his determinations when he tried to equitably resolve the issues of this divorce action. The trial court

made 16 findings of fact, but only six issues are contested on appeal. They involve spousal support, child support, tax exemptions, debt division, health-insurance coverage, and visitation restrictions.

 Section 14–05–24, N.D.C.C., and the *Ruff-Fischer* guidelines are used by North Dakota courts to compel a party to provide for maintenance of the children and allowances to the other spouse. See *Ruff v. Ruff,* 78 N.D. 775, 52 N.W.2d 107 (N.D. 1952); *Fischer v. Fischer,* 139 N.W.2d 845 (N.D.1966). Factors that are considered when determining the amount of support to be provided include the ages of the parties, their earning abilities, duration of the marriage and conduct of the parties during the marriage, their station in life, the circumstances and necessities of each, their financial circumstances, and the value and income-producing capacity of their property. *Urlaub v. Urlaub,* 325 N.W.2d 234 (N.D. 1982). The trial court's findings of fact regarding support will not be set aside on appeal unless they are clearly erroneous. Rule 52(a), N.D.R.Civ.P. A finding of fact is clearly erroneous when we are left with a definite and firm conviction that a mistake has been made. *Briese v. Briese,* 325 N.W.2d 245 (N.D.1982).

 In this case the judge awarded Peggy $100 per month for 30 months as spousal support. Today, when possible, spousal support is used as a method of rehabilitating the spouse disadvantaged by the divorce. *Gooselaw v. Gooselaw,* 320 N.W.2d 490 (N.D.1982); *Bingert v. Bingert,* 247 N.W.2d 464 (N.D.1976). This case involves an example of the use of rehabilitative alimony. Peggy Smith is young and capable and she desires to go to college to learn a profession to help herself become better able to support herself and the four children in her custody. Peggy has chosen an area of training, speech pathology, that she can also use to help her child who has a speech impediment.

Peggy quit college after three months to marry Tom and become a wife and mother. During their marriage Peggy worked as a secretary and a baby-sitter to help support the family. Peggy's desire to go back to school to acquire the necessary education for financial independence is commendable. Tom, as well as Peggy and the children, will be benefited as a result of Peggy's rehabilitation because in four years she will be better able to share in the burden of supporting four minor children.

The trial court awarded Peggy spousal support of $100 per month for 30 months. We are concerned with the amount of support and the time period limiting Peggy's spousal support to 30 months. Peggy worked while Tom was going to college at Wahpeton, and Peggy's father provided them with financial support. Now Peggy needs assistance from Tom during her return to college. With Tom's gross monthly earnings of approximately $2,200 per month, he is unable to pay for all of Peggy's educational expenses in addition to paying child support and his living expenses. However, we do believe Tom is able to pay $200 per month to Peggy for spousal support. After paying spousal support and child support, Tom will be left with $1,400 per month to meet his living expenses and to pay taxes, social security, etc. We are left with a firm conviction that the trial court made a mistake in awarding Peggy spousal support of $100 per month, and we modify the award to $200 per month.

It is obvious that Peggy cannot pay all her educational expenses with $2,400 per year. Even with a $100 per month increase in spousal support, Peggy will still have to obtain money from other sources. However, the $200 per month Tom provides to Peggy will be used to assist her in attaining her educational goal. See *Porter v. Porter,* 274 N.W.2d 235 (N.D.1979).

 The trial judge limited Peggy's spousal support to 30 months. The judge does not explain in his findings or conclusions why he chose the 30-month limit. There must be some factual basis in the record for the length of time spousal support is to be paid. See *Mees v. Mees,* 325 N.W.2d 207 (N.D.1982).

We can hypothesize that the trial court reasoned Peggy would be able to complete a four-year-degree program in 2½ years because she had taken some general classes at Valley City State College and some general-secretarial classes at Wahpeton State School of Science.

However, there is no evidence in the record showing that these credits received ten years ago will transfer and be accepted as part of Peggy's speech-pathology curriculum. If they are not transferable Peggy will have to start over and take all the courses required by the school she attends for her chosen degree. We have reviewed the trial judge's finding that Tom must pay spousal support for 30 months and we are left with a firm conviction that a mistake has been made. We modify the order requiring that Tom pay Peggy $100 per month for 30 months to make the order effective for four years, the time Peggy needs to acquire her college degree. This spousal-support order of $200 per month for four years may be modified at any time by the trial court upon a showing of a change in circumstances making the award inequitable. *Mees, supra; Eberhart v. Eberhart,* 301 N.W.2d 137 (N.D.1981).

▉ The second area in which Peggy contends the trial court erred involves the amount of child support Tom must pay. The trial judge ordered Tom to pay $100 per month as support for each of the four children until each child reaches age 18. Like determinations of spousal support, the issue of child support is a question of fact reviewed according to the "clearly erroneous" standard. *Freitag v. Freitag,* 318 N.W.2d 760 (N.D.1982). The *Ruff-Fischer* guidelines enumerated above are used by trial judges to determine the amount of child support. *Bosma v. Bosma,* 287 N.W.2d 447 (N.D.1980). Important factors that should have been considered in this action are Tom's and Peggy's earning abilities, their current financial circumstances, the necessities of each, and the necessities of the children.

The trial judge determined Tom earns approximately $2,200 to $2,300 gross per month. Peggy earned $275 per month in Leeds during the summer. Tom has a secure job as an equipment operator. It will be difficult for Peggy to work many hours as a full-time college student and custodial parent of four minor children. Both Tom and Peggy must rent housing and neither has income-producing property. Tom has a vehicle, while Peggy must buy one. Peggy has been receiving $1,000 per month from her father; however, he cannot be expected to support Tom and Peggy's children while Tom is able to do so.

▉ Tom projects his monthly budget needs at $950; Peggy projects the monthly needs of herself and her children at $1,621. Tom's salary cannot provide both parties with what they want; therefore, the court must do the best it can under circumstances such as these. *Kostelecky v. Kostelecky,* 251 N.W.2d 400 (N.D.1977). It is a duty of the trial court to attempt to balance the needs of the children with the father's ability to pay. *Schumacher v. Schumacher,* 242 N.W.2d 136 (N.D.1976); *Hoster v. Hoster,* 216 N.W.2d 698 (N.D.1974).

▉ In the instant case we believe the trial court clearly erred in its attempt to strike this balance because of the disparity between Tom's and Peggy's incomes and their respective abilities to financially support their children. The needs of the four minor children in Peggy's custody require that Tom pay more than $100 per month per child. In addition to the usual expenses of housing, food, clothing, education, and child care, Tom and Peggy's children have special medical expenses. We believe Tom is able to pay $150 per month per child and the needs of his children require it. Accordingly, we modify the trial court's order for child support from $100 per month per child to $150 per month per child.

Even with the increased monthly income from Tom of $600 for child support, Peggy will have to budget carefully to ensure that all the children's needs are met. If, at a later time, Tom becomes unable to pay this amount, he should appear in court and present evidence of that change in circum-

stance. See *Meadows v. Meadows,* 312 N.W.2d 464 (N.D.1981).

Peggy specified four additional areas in the district court's judgment where she believes mistakes have been made. Peggy argued that Tom should be limited to claiming two of the four children as exemptions for tax purposes. With our adjustment of Tom's monthly child-support payment from $400 to $600 per month, we do not believe it is inequitable for Tom to receive all four tax exemptions.

Peggy also argued that she should receive a portion of an anticipated income tax return to pay two debts totaling $750 that were allocated to her. The other debts acquired by Tom and Peggy during their marriage totaled approximately $2,750 and were allocated to Tom by the trial judge. We do not believe the judge's decision to give Tom the anticipated tax refund which he could use in the payment of these debts was in error.

Peggy requested in oral argument and in her brief that Tom be required to provide her with signed health-insurance claim forms for the children's medical expenses. The trial judge ordered Tom to maintain health-insurance coverage for the four minor children. If forms signed by Tom are necessary for the use of the insurance coverage, Tom is already required to provide them. If he refuses to do so, Peggy may return to the trial court and request that Tom be found in contempt of the trial court's order.

Finally, Peggy requests that Tom's visitation rights be restricted so that the children will not be required to visit Tom at the home of Butch and Yonna Hanson, with whom he is currently living. At the trial, Tom, Peggy, and a counselor testified regarding their beliefs about whether or not it would be harmful to the children to force them to visit their father in the environment of the Hansons' home. The trial judge specifically stated in his findings of fact that Tom "may bring the minor children ... to his residence during appropriate visitation times, and ... it is not appro-

priate to prohibit such visitations to [Tom's] residence." The trial judge is better able than is this court to ascertain the facts by listening to and observing the witnesses. *Bosma v. Bosma, supra.* We do not find the trial judge's decision to not restrict the place of visitation to be in error.

In summary, because we are left with a definite and firm conviction that a mistake has been made, we remand this case to the district court for purposes of modifying the judgment to provide child support in the amount of $150 per month per child and to provide Peggy spousal support in the sum of $200 per month for a period of 48 months. We affirm the judgment as thus modified.

ERICKSTAD, C.J., and PEDERSON, PAULSON and SAND, JJ., concur.