Leon HELLER, Jr., Plaintiff and Appellee,

v.

Bridgette HELLER, Defendant and Appellant.

Civ. No. 10835.

Supreme Court of North Dakota.

April 30, 1985.

Ramlo Law Office, Fargo, for plaintiff and appellee; argued by Robert Ramlo, Fargo.

Garaas Law Firm, Fargo, for defendant and appellant; argued by David Garaas, Fargo.

LEVINE, Justice.

Bridgette Heller (Bridgette), appeals from a district court judgment and amended judgment granting Leon Heller, Jr., (Leon) a divorce. The appeal involves issues of child support, property division, and attorney's fees. We affirm in part, reverse in part, and remand for further proceedings.

Leon and Bridgette were married on September 30, 1972. Four children were born during their marriage: Shawn Michael, born on March 2, 1973; Jamie Lee, born on March 20, 1974; Chad Bruce, born on January 18, 1977; and Bradley Wayne, born on April 24, 1978.

The marital assets were valued at approximately $38,000 net. The primary asset characteristically was the family home in Leonard, North Dakota, listed for sale at the time of trial. The trial court found that the home had a value of $47,000 subject to a mortgage of $27,000.

The trial court granted Leon a divorce based on irreconcilable differences; awarded Bridgette custody of the four children; ordered Leon to pay $130 per month per child for child support; ordered the parties to be responsible for their own attorney's fees; and divided the couple's marital property. Leon received all the vehicles and equipment valued at approximately $11,000–$15,000. Bridgette received household items valued at approximately $3,000–$6,000. The trial court also awarded Bridgette the house and ordered her to pay Leon $2,000 from the proceeds of the sale of the house.

After judgment was entered, Bridgette moved to amend the judgment to require Leon to pay $187.50 per month per child for child support and to pay Bridgette's attorney's fees and costs in a sum of not less than $2,500. Bridgette also moved for a new trial on the issue of child support or for relief from the judgment.

Each party submitted affidavits on the motion, and the trial court heard argument from counsel. Thereafter, the trial court amended the judgment only insofar as it

related to the house to require Bridgette to pay Leon any amount in excess of a gross sale price of $45,000 with Bridgette to pay all costs of the sale. The trial court denied further relief.

An amended judgment was entered, and Bridgette appealed from the initial judgment, the order denying her post-trial motions, and the amended judgment.

Bridgette contends that the trial court erred in awarding but $520 a month in child support for the four children, and in not attributing fault to Leon so as to increase the award of child support. Bridgette also contends that the trial court erred in not granting her motion to amend the judgment to increase child support.

■■■ Determinations of child support are questions of fact subject to the "clearly erroneous" standard of Rule 52(a), NDRCivP. *Smith v. Smith,* 326 N.W.2d 697 (N.D.1982). A finding of fact is clearly erroneous when, although there is some evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Kostelecky v. Kostelecky,* 251 N.W.2d 400 (N.D.1977).

To the extent that the law governing child support can be concisely stated, there are three major reference points which are interrelated and overlapping. First, this Court has stated that the *Ruff-Fischer*[1] guidelines are used to determine the amount of child support. *E.g., Smith v. Smith, supra.* Second, we have also recognized the principle that the trial court must attempt to strike a balance between the needs of the child and the ability of the parent to pay. *E.g., Skoglund v. Skoglund,* 333 N.W.2d 795 (N.D.1983).

Finally, Section 14–17–14(5), NDCC,[2] provides a listing of some of the relevant factors to be considered in any proceeding to determine the amount of child support to be paid by a parent. *State of Oregon ex rel. Krueger v. Krueger,* 292 N.W.2d 60 (N.D.1980). That section provides as follows:

"In determining the amount to be paid by a parent for support of the child and the period during which the duty of support is owed, a court enforcing the obligation of support shall consider all relevant facts, including:

a. The needs of the child.

b. The standard of living and circumstances of the parents.

c. The relative financial means of the parents.

d. The earning ability of the parents.

e. The need and capacity of the child for education, including higher education.

f. The age of the child.

g. The financial resources and the earning ability of the child.

h. The responsibility of the parents for the support of others.

i. The value of services contributed by the custodial parent."

■■■ Ordinarily, fault of the parties is not relevant to the issue of child support because it adds nothing to the balancing process between needs and ability. Unless fault were directly related to a party's ability to provide support, it is of no moment. That is not the case we have before us and we are unpersuaded by Bridgette's argument that fault should have been considered.

1. See *Ruff v. Ruff,* 78 N.D. 775, 52 N.W.2d 107 (1952); *Fischer v. Fischer,* 139 N.W.2d 845 (N.D. 1966). The *Ruff-Fischer* guidelines are as follows:

"the respective ages of the parties to the marriage; their earning abilities; the duration of the marriage and the conduct of each during the marriage; their station in life; the circumstances and necessities of each; their health and physical condition; their financial circumstances as shown by the property owned at the time, its value at that time, its income-producing capacity, if any, and whether accumulated or acquired before or after the marriage; and such other matters as may be material." *Sanford v. Sanford,* 301 N.W.2d 118, 126 (N.D.1980).

2. Chapter 14–17, NDCC, is the Uniform Parentage Act.

The primary factors then in fixing amounts of child support include each parent's earning ability, current financial circumstances and necessities as well as the necessities of the children. *Smith v. Smith, supra.* In considering the income and expenses of each parent, the court will examine the nature of the expenses and whether they are actual necessities in view of the parties' financial resources. *State of Minnesota, County of Clay v. Doty*, 326 N.W.2d 74 (N.D.1982); *State of Oregon ex rel. Krueger v. Krueger, supra.*

Because the child support issues raised by Bridgette require consideration of Bridgette's and Leon's monthly incomes and expenses, we briefly recite the testimony on those matters presented at trial.

Leon testified at trial as to his monthly take-home salary of $1,800—$1,900 as a truck driver with monthly expenses of approximately $843.50, which he itemized. Leon testified about his additional expenses for car license and tires, but he did not quantify them. He further testified that he was able to pay $500–$600 a month in child support.

On cross-examination, Leon testified as to Bridgette's monthly expenses of approximately $1,325 in itemized fashion. Leon further testified that he did not know Bridgette's monthly entertainment expenses.

Bridgette's testimony as to her financial status was limited. She testified at trial that she made $900—$950 a month in take-home pay. She did not testify as to her monthly expenses, nor did she contradict Leon's testimony, except with regard to her babysitting expense which she stated was $200 per month. Bridgette testified as to her conclusion that she needed $750 a month in child support to make ends meet. Bridgette further testified to the conclusion that if she had to pay her own attorney's fees, $750 per month for child support would be insufficient.

Based on this testimony, the trial court found that Leon had a monthly salary of $1,800—$1,900 and monthly expenses in the approximate sum of $850, and that Bridgette had a net income of approximately $900—$950 per month and monthly expenses in excess of her monthly earnings. Although a specific finding of fact on Bridgette's monthly expenses would have been preferable for our review, we are mindful that the trial court was hampered by the limited testimony presented at trial concerning those expenses. Except for Bridgette's testimony concerning her babysitting expenses, the trial court was presented with only Leon's testimony concerning Bridgette's monthly expenses. Additionally, the parties chose not to present oral or written final argument at the conclusion of the trial. Based on Leon's testimony at trial concerning Bridgette's monthly expenses and giving full credence to Bridgette's testimony that her monthly babysitting expenses were $200, rather than $130 as testified to by Leon, the evidence presented at trial reflects that Bridgette's monthly expenses were approximately $1,400.

The award of $520 a month for child support enables Bridgette to meet her monthly expenses, based on the *only* evidence presented at trial. We hold, therefore, that the trial court's finding on child support is not clearly erroneous.

Bridgette also contends that the trial court erred in denying her post-judgment motion to amend the judgment to increase the child support to $187.50 per month per child. The motion was supported by her affidavit which set forth her monthly expenses at $1,688.81. Leon's responsive affidavit disputed Bridgette's figures and listed her monthly expenses at $1,346.

After argument by counsel, the court denied Bridgette's motion to amend the judgment with respect to child support. The court made the following comment:

"THE COURT: Well, the Court does not want to rehash its determinations at the time of trial. Perhaps I could have made more findings of fact, such as the Court was of the opinion that the property received by plaintiff did not have the income-producing capacities as the property received by the defendant.

"The Court also, if anything, *based upon the values the Court was given at the time of the trial, not the values that I seem to be given now,* that the Court leaned towards the defendant in the distribution of the properties. The Court is of the opinion that for the time being—and this does not in any way restrict either of the parties to seek modification of child support payments. Based upon current income, the Court is of the opinion that, presently, the child support payments are within acceptable limits." [Emphasis added.]

We agree with the trial court that the itemized expenses presented by Bridgette in her affidavit in support of her motion to amend the judgment reflected an effort to present different evidence than that presented at trial. Bridgette did not assert that the information in her affidavit was either unavailable at trial or newly discovered evidence. She had the opportunity at trial to present the itemized expense figures contained in her affidavit.

■ In *Kraft v. Kraft*, 366 N.W.2d 450 (N.D.1985), we upheld the trial court's denial of a motion under Rules 59 and 60, NDRCivP, based on the movant's contention that she should have been permitted to present more evidence on the value of certain property. We noted that the parties had sufficient opportunity to present evidence concerning the property values at trial, and we concluded that the trial court did not abuse its discretion in denying the post-trial motion on that basis. A motion to amend findings of fact, or to amend a judgment, may not be used to relitigate factual questions and present evidence which was available to be presented at trial. See 5A Moore's Federal Practice ¶ 52.11[2]; 6A Moore's Federal Practice ¶ 59.07; see also *Porter v. Porter*, 274 N.W.2d 235 (N.D. 1979).

■ A decision on a motion to amend a judgment rests in the discretion of the trial court and will not be reversed unless there was a manifest abuse of discretion. *Porter v. Porter, supra.* We conclude that the trial court did not abuse its discretion in denying Bridgette's motion to amend the judgment.

Bridgette also contends that the trial court's property distribution, as it relates to the house, was inequitable. The original judgment ordered Bridgette to pay Leon $2,000 from the proceeds of the sale of the house. The trial court's amended judgment provided as follows:

"[U]pon the sale of the property, the Defendant [Bridgette] shall pay to the Plaintiff [Leon] all sums of money from the proceeds of the sale which are received in excess of a gross sales price of $45,000.00 Defendant [Bridgette] is ordered to pay for all costs of the sale and no amount of the costs of the sale will be taken away from the sum of money to be paid to Plaintiff [Leon]."

Bridgette argues that the method utilized by the trial court is unfair to her because a delay in the sale of the home might necessitate improvements to the home to keep it in repair. She argues that she would derive no benefit from an increase in sale price arising from the improvements.

■ A trial court's determination on matters of property division is treated as a finding of fact and will not be set aside unless clearly erroneous. *Sanford v. Sanford*, 301 N.W.2d 118 (N.D.1980). Considering the entire distribution, rather than this one aspect of the distribution, we are not left with a definite and firm conviction that a mistake was made in the trial court's division of the marital estate. The property division is, therefore, not clearly erroneous.

Bridgette contends that the trial court misapplied the law in not awarding her her attorney's fees.[3] Bridgette testified at trial that her attorney's fees were between $2,000 and $3,000 and that she had paid

**3.** During the course of the proceedings in the lower court, Bridgette dismissed her first attorney and retained present counsel who represented her at trial and on appeal.

$200 of a $1,400 bill submitted by her first attorney. The trial court was not presented with any further information to evaluate the claim for attorney's fees. No billing or itemized affidavit for attorney's fees was submitted. The judgment required the parties to pay their own attorney's fees. The trial court did not state a basis for its decision.

In her motion to amend the judgment, Bridgette requested an award of attorney's fees of not less than $2,500. Bridgette's affidavit, in support of her motion, stated that she had incurred approximately $2,300 in unpaid attorney's fees. Leon's affidavit generally disputed the amount of attorney's fees. Bridgette filed an affidavit in response, in which she stated that she owed her first attorney $1,418 and her present attorney between $900 and $1,200. However, the affidavits provided no itemization of time, activity, or hourly rate.

The trial court denied Bridgette's motion to amend the judgment to include attorney's fees and stated:

"I might comment upon attorney's fees. This Court is of the opinion that wherein there is—or the Court finds unencumbered assets of the parties and divides those assets pursuant to North Dakota law, that the matter of attorney's fees will be paid out of the assets which the Court has divided. This gives both parties the free choice of attorneys. It is obvious to the Court that there are some attorneys that are very expensive and some attorneys that are not so expensive. And the Court feels that by taking the cost of attorney fees out of the division of assets in the event there are net assets not subject to encumbrances, that it gives each of the parties the ability and the freedom to choose an attorney of their choosing regardless of cost. I do not do that wherein there are no assets without encumbrances."

Bridgette argues that the trial court misapplied the criteria for awarding attorney's fees in divorce proceedings as set out in

*Jondahl v. Jondahl*, 344 N.W.2d 63 (N.D. 1984).

In *Jondahl v. Jondahl, supra,* we stated: "[i]n determining the amount of attorney's fees to be paid by the opposing party, the trial court should consider the property owned by each party as a result of the property division, the relative income, whether the property is liquid or of fixed assets, and whether or not the actions of the parties unreasonably increased the time spent on the case." See also *Gooselaw v. Gooselaw*, 320 N.W.2d 490 (N.D.1982); *Nastrom v. Nastrom*, 284 N.W.2d 576 (N.D.1979). Bridgette contends that because she did not receive liquid or income producing property, and because of the disparity in her and Leon's income, she should have been awarded her attorney's fees.

Whether or not the trial court awards attorney's fees in an action for divorce is within its discretion pursuant to Section 14–05–23, NDCC. *Jondahl v. Jondahl, supra.* The trial court's decision will not be disturbed on appeal unless the party appealing affirmatively establishes that the trial court abused its discretion. *Nastrom v. Nastrom, supra.* A trial court abuses its discretion if it misinterprets or misapplies the law. *Midwest Developers v. Goma, Inc.,* 121 Wis.2d 632, 360 N.W.2d 554 (App.1984); *In re Estate of Vaughn,* 315 Pa.Super. 354, 461 A.2d 1318 (1983); *McCurry v. McCurry,* 279 Pa.Super. 223, 420 A.2d 1113 (1980).

On its face, the trial court's explanation for its decision not to award attorney's fees rests exclusively on the availability of unencumbered assets. We are not sure therefore whether it considered all applicable criteria. The significant disparity in the parties' incomes and the modesty of their marital estate indicates a likelihood that it did not. Therefore, we reverse and remand for a determination of whether or not to award attorney's fees in accordance with the criteria set out in *Jondahl*.

In her brief, Bridgette also requests attorney's fees for her appeal. No

motion was made in the trial court or in this Court for attorney's fees on appeal. Although this Court and the trial court have concurrent jurisdiction to award attorney's fees on appeal, we believe that the trial court is in the better position to rule on a motion for attorney's fees on appeal. *Porter v. Porter*, 274 N.W.2d 235 (N.D. 1979).

For the reasons stated, the judgment and amended judgment are affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

ERICKSTAD, C.J., and VANDE WALLE, GIERKE and MESCHKE, JJ., concur.