Jerome A. HEDIN, Plaintiff
and Appellee,

v.

Mavis HEDIN, Defendant and
Appellant.

Civ. No. 10860.

Supreme Court of North Dakota.

June 27, 1985.

Ramlo Law Office, Fargo, for plaintiff and appellee; argued by Jean A. Samelson, Fargo.

Duis Law Offices, Fargo, for defendant and appellant; argued by George E. Duis, Fargo.

ERICKSTAD, Chief Justice.

Mavis Hedin appeals from a district court judgment granting Jerome Hedin a divorce on the ground of irreconcilable differences. Mavis contends that the trial court clearly erred in dividing the parties' property and in failing to award her alimony or rehabilitative alimony and her attorney's fees and costs. We modify the court's spousal support provision, affirm the property division, and remand for a redetermination of the spousal support and for a determination of whether or not attorney's fees should be awarded.

There is little dispute about the facts. The 28-year marriage of Jerome and Mavis Hedin was dissolved by decree on October 4, 1984. At the time of trial, the parties' three children had reached the age of 18. Jerome was 53 years of age, in fair health, and employed as a church custodian at $14,800 per year. Jerome testified that his monthly take home pay was $962, and he enumerated various monthly expenses totaling $957. Jerome resided in a mobile home at the time of trial, having left the family home in September 1983.

Both parties are high school graduates. After their marriage in 1956, Jerome worked in a hardware store in Fargo, North Dakota, for one year, then took a job in 1957 as a warehouseman for an appliance distributor. He was a salesman for the appliance distributor from 1960 to 1975. He then farmed land the parties purchased from Jerome's mother and brother in Norman County, Minnesota. After farming for approximately two years, he accepted employment in 1978 with another distribu-

torship from which he earned approximately $28,000 in 1981, before losing that employment in January 1982 for reasons not fully disclosed in the record. Jerome testified that he does not want to get back into the appliance sales field as he was "told in 1975 by the Fargo Clinic to get out of ... sales or I would end up in the hospital."

Mavis has been a traditional homemaker for most of the marriage. At the time of trial she was 50 years of age, in fair health, and had employment with a Tupperware distributor, packing and lifting large boxes at $3.35 per hour, two days a week, earning approximately $200 in take-home pay per month. Mavis has worked outside the home sporadically during the marriage for a kitchen supply store, for a cleaning business, for a church as a wedding coordinator, and for a leasing company for whom she cleaned apartments.

The trial court found that Mavis "has no vocation but is able-bodied and should be able to obtain employment." The court also found that Mavis' current monthly expenses totaled in excess of $500, and that two of the parties' children were residing with her at the time of trial in the family home.

The trial court found that, during the marriage, "the parties have disagreed, argued and were generally incompatible. The plaintiff left the family home some two years ago and is currently having an affair with another woman."

Jerome testified that he informed Mavis at least 10 years prior to trial that he would be leaving her when the oldest child turned 18 or graduated from high school.

The trial court valued the parties' joint assets at $291,000, and their joint liabilities at $147,444. The primary marital assets consist of (1) the family home located in Fargo valued at $90,000 subject to a mortgage of $10,000, (2) 10 acres of land located in Norman County, Minnesota, valued at $7,500, which the parties purchased as a potential homestead, and (3) 310 other acres of land in Norman County, Minnesota, which they have sold through a contract for deed apparently entered into on March 1, 1983.

The trial court found that there will be under the contract for deed potential income to the parties of $10,750 per year. The terms of the contract reveal that Jerome and Mavis agreed to sell the land at a purchase price of $268,500, with $53,500 due at the time of the execution of the agreement. Principal payments of $10,750 plus interest on the unpaid balance are due annually on March 1. The land under contract for deed was subject to a Federal Land Bank mortgage of $60,000 which Jerome and Mavis agreed to retain responsibility for under the contract. Jerome testified that he received from the buyer approximately $21,000 for the March 1, 1984, principal and interest payment, which he allegedly applied to the Federal Land Bank mortgage and other family debts.

The district court's judgment ordered that the parties' home be sold and that the proceeds, after reasonable costs of sale, be used to pay the following described liabilities of the parties:

| | |
|---|---|
| Production Credit Association | $15,112.27 |
| Earl Schneider | 12,000.00 |
| First Federal (home mortgage) | 10,000.00 |
| Big Horn-Tobiason | 8,000.00 |
| Stacy Veldman | 8,000.00 |
| Midwest Leasing | 7,732.00 |
| Total | $60,844.27 |

The court's judgment directed that $12,000 of the remaining proceeds from the sale of the home be paid to Mavis, and that any remainder be divided equally between the parties.

The trial court also ordered that the parties' two campers, valued at $3,000, and the parties' 10 acre tract of land, valued at $7,500, be sold and the proceeds used to discharge debts to Norwest Bank ($6,600) and Jerome's mother, Leona Hedin ($5,000), with any remaining proceeds to be divided equally. Mavis was held responsible for any income tax liability for the year 1983, which Jerome estimated at trial will be approximately $5,000.

The contract for deed was made the property of the parties as tenants in com-

mon subject to the Federal Land Bank mortgage. The court directed that all income derived from the contract be equally divided between the parties after reasonable expenses and mortgage payments are made. The court also awarded Mavis personal property valued at approximately $7,450, and Jerome personal property valued at approximately $9,200. Jerome was ordered to pay Mavis $250 per month as "alimony" until such time as the family home was sold. All alimony payments were to cease upon the sale of the home.

Mavis generally asserts

"that she is in poor health, untrained to work and unskilled, and devoted her life to Plaintiff and her family as a housewife, and is entitled to maintenance and alimony, and is entitled to attorneys fees, as well as an equal division of the Parties' property and argues that she should not be responsible for her husband's debts he incurred in the Big Horn-Tobiason property in Montana that totally failed, or his personal debts.... [She] argues she is entitled to at least rehabilitative alimony and should not be kicked out after spending her life raising a family with no training to make a living."

### Property Division

Mavis contends that the trial court's property division, as it relates to the sale of the house and other property to pay accumulated debt, is clearly erroneous. She argues that at least $25,000 of this debt was incurred by Jerome without her knowledge and consent.

■ A trial court's determination on matters of property division is treated as a finding of fact and will not be set aside unless clearly erroneous. *E.g.*, *Heller v. Heller*, 367 N.W.2d 179, 183 (N.D.1985). A finding of fact is clearly erroneous when, although there is some evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* at 181. In considering the entire distribution in this case and not merely the allocation of debt, we are not left with a definite

and firm conviction that a mistake was made in the trial court's division of the marital estate.

■ The trial court specifically found that the parties "have *joint* indebtedness in the total sum of $147,444.00." [Emphasis added.] We are not directed to any evidence that contradicts this finding, but we have discovered a statement in the transcript where Jerome said "she [Mavis] was against everything."

There is no contention or showing that the debts arose as a result of the squandering of the parties' assets, the intentional or neglectful destruction of marital property, or an intentional effort to circumvent a just and proper distribution of the marital property by the trial court. Much of the challenged debt resulted from what may be characterized, with the benefit of hindsight, as bad investments. Mavis will benefit from the investments in the Minnesota land.

The trial court could have reasonably concluded that if Mavis was in fact opposed to all investments, but wanted to participate in the benefits of the good investments, that she must also share in the losses of the bad investments.

We are not convinced that the trial court made a mistake in the division of the marital assets and liabilities.

### Spousal Support

■ Mavis contends that the trial court erred in failing to award her "alimony or rehabilitative alimony." The trial court awarded Mavis "alimony" in the amount of $250 per month until such time as the parties' home in Fargo was sold. Whenever the term "alimony" is used it usually means spousal support as opposed to a division or distribution of property. *Rust v. Rust*, 321 N.W.2d 504, 508 (N.D.1982); *Jochim v. Jochim*, 306 N.W.2d 196, 199 n. 5 (N.D.1981).

■ We have often said that the purpose underlying alimony or spousal support is rehabilitation to allow the disadvantaged

party time and resources to acquire new skills. It may be for a limited period of time or it may be permanent to provide the traditional maintenance for a party incapable of rehabilitation. *See, e.g., Delorey v. Delorey*, 357 N.W.2d 488, 490 (N.D.1984); *Bullock v. Bullock*, 354 N.W.2d 904, 911 (N.D.1984); *Smith v. Smith*, 326 N.W.2d 697, 700 (N.D.1982). Mavis was clearly the party disadvantaged by the divorce. Having been a full-time homemaker for most of the marriage, Mavis has not had the opportunity to prepare herself to compete in the employment market, and is now on her own, without the benefit of Jerome's earning ability.

However, the record does not support a conclusion that Mavis is incapable of rehabilitation in time. *See Briese v. Briese*, 325 N.W.2d 245, 249 (N.D.1982); *Gooselaw v. Gooselaw*, 320 N.W.2d 490, 493 (N.D.1982). Mavis testified that she would be willing to go to school to acquire the necessary training to "make a living."

■ In our view, the record justifies an award of rehabilitative spousal support to Mavis. We have reviewed the trial court's award of alimony and the contingency placed upon it, that is, that monthly payments will cease upon the sale of the parties' home. In light of this contingency, we are left with a definite and firm conviction that a mistake has been made. We realize that there exists the probability that Mavis will receive, as part of the property distribution, $12,000 in proceeds from the sale of the house plus a half of what is left over after the itemized debts and costs of the sale are paid. The concept of property division is, however, distinct from that of spousal support. *Oviatt v. Oviatt*, 355 N.W.2d 825, 827 (N.D.1984); *Williams v. Williams*, 302 N.W.2d 754, 758 (N.D.1981). We said in *Williams*, 302 N.W.2d at 758:

"The equitable division of property has for its basis the husband's and the wife's respective rights to an equitable portion of the property which has been accumulated by the parties through their joint efforts and for their mutual benefit during the marriage. The function of alimo-

ny, on the other hand, has been identified by this court to be the method for rehabilitating the party disadvantaged by the divorce. *Bingert v. Bingert*, 247 N.W.2d 464 (N.D.1976)."

■ We believe that the term of the trial court's award of alimony in the amount of $250 must be modified so that the award will continue for such a time as may be reasonably necessary for Mavis to secure education and training whereby she may become self-supporting. The placement of a specific time when spousal support payments will cease, rather than a time period uncertain in duration, will more readily effectuate the rehabilitative purposes of spousal support. *See Lipp v. Lipp*, 355 N.W.2d 817, 821 (N.D.1984).

### Attorney's Fees

■ Mavis contends that the trial court erred in not awarding her attorney's fees and costs. In determining the amount of attorney's fees to be paid by the opposing party, the trial court should consider the property owned by each party as a result of the property division, the relative income, whether the property is liquid or of fixed assets, and whether or not the actions of the parties unreasonably increased the time spent on the case. *E.g., Heller v. Heller*, 367 N.W.2d at 184; *Jondahl v. Jondahl*, 344 N.W.2d 63, 73 (N.D.1984).

■ Mavis requested, in her answer to Jerome's complaint, that the trial court award her reasonable costs and attorney's fees. Following trial, the court issued a memorandum opinion from which findings of fact and conclusions of law were drawn, and a judgment entered. An examination of these documents does not reveal the court's thinking or even the court's decision relative to this issue unless we are to conclude from an absence of reference thereto that the court has denied this request.

Recently, in *Heller v. Heller*, 367 N.W.2d at 184, we reversed the trial court's denial of a motion to amend a divorce judgment to include an award of attorney's fees. In *Heller*, the trial court's explanation for its

decision, on its face, rested exclusively on the availability of unencumbered assets. We said:

"We are not sure therefore whether ... [the trial court] considered all applicable criteria. The significant disparity in the parties' incomes and the modesty of their marital estate indicates a likelihood that it did not. Therefore, we reverse and remand for a determination of whether or not to award attorney's fees in accordance with the criteria set out in *Jondahl*." *Id.*

The record is devoid of any indication that the trial court considered all applicable criteria. Therefore, as in *Heller*, we remand for a determination of reasonable costs including attorney's fees in accordance with all applicable criteria.

In conclusion, we remand this case to the district court for purposes of modifying the judgment to provide Mavis spousal support for such a time as may be found to be reasonably necessary for Mavis to secure education and training whereby she may become self-supporting, and for a determination of whether or not Mavis should be awarded reasonable costs including attorney's fees. In all other respects, the judgment is affirmed.

GIERKE, VANDE WALLE, LEVINE and MESCHKE, JJ., concur.